Argued February 5, reversed March 5, rehearing denied March 26, 1929.

STATE ex Rel. D. M. NAYBERGER *v.* JOHN F. McDONALD et al.

(274 Pac. 1104.)

For appellant there was a brief over the names of *Mr. Everette I. Adcock* and *Messrs. Ganoe & Ganoe,* with an oral argument by *Mr. Adcock.*

For respondent there was a brief and oral argument by *Mr. S. J. Bischoff.*

McBRIDE, J.—This is a proceeding for contempt, which, it is claimed, occurred by disobedience to an order of the court authorizing the receiver to take possession of certain effects of one of the defendants, and arising out of the following circumstances.

It appears from the complaint that the plaintiff is the owner and holder of certain notes executed by the defendants John F. McDonald and Mary B. McDonald to Russell E. Butler, and later assigned to the plaintiff and another, and by certain transfers and assignments finally becoming the property of plaintiff. The plaintiff brought this suit to foreclose the mortgage. The mortgage is in the usual form, and contains the following provisions:

"It is expressly understood and agreed that such premises are and shall be kept until this mortgage is fully paid and satisfied, free from all liens and incumbrances whatsoever that shall or may have precedence of this mortgage; that all buildings and tenements that are now upon or that may hereafter be erected upon said premises shall be kept insured for an amount not less than thirty-seven thousand five hundred and no/100 * * during all the time that this mortgage shall remain unpaid or unsatisfied, in one or more good and responsible fire insurance companies, against all loss or damage by fire; the loss or damage, if any, to be made payable to the said party of the second part, his executors, administrators and assigns, and in case the said parties of the first part their heirs or assigns, shall fail, neglect or refuse to

obtain said insurance, or to pay all taxes, street assessments, mechanics' liens or claims of every name and nature, that are or may become a lien or liens upon said premises, having precedence of the lien of this mortgage before the sums shall become delinquent, then the said party of the second part his executors, administrators and assigns, may at their option obtain said insurance and pay the premiums therefor, and may pay, discharge and satisfy any and all such taxes, street assessments or liens at maturity, and all sums of money thus expended shall at once become due and payable on demand from the said parties of the first part their heirs and assigns, to the said party of the second part his executors, administrators and assigns, and that such payment, as well as the attorney's fees mentioned in said note, be and they are hereby secured by the lien of this mortgage.

"It is also expressly understood that if any sum made payable by the terms of said promissory note, or becoming due hereunder, shall remain unpaid for a period of ten days after the same shall have become due and payable, then the party of the second part, his executors, administrators and assigns may foreclose this mortgage at any time thereafter."

The complaint contains the following allegations:

"That prior to the execution of the aforesaid note and mortgage defendants John F. McDonald and Mary B. McDonald for a valuable consideration made, executed and delivered to The Pacific Savings & Loan Association, a corporation, their promissory note for the sum of $27,500.99, bearing interest at the rate of eight per cent per annum and payable in monthly installments of $333.57 on the first day of each and every month, and to secure the payment of the said note the said defendant John F. McDonald and Mary B. McDonald, husband and wife, did make, execute and deliver to the said The Pacific Savings & Loan Association, a corporation, a mortgage upon the real property described herein, by the terms of which mortgage it was among other things provided that in

case of default in the payment of the said promissory note according to its terms, that all of the principal sum remaining unpaid shall at the election of the holder thereof without notice at once mature and become payable, and the mortgagee may at once foreclose the said mortgage.

"That to further secure the payment of the last mentioned note defendants John F. McDonald and Mary B. McDonald, husband and wife, did, among other things, by the said mortgage provide that:

" 'The rents, issues and profits of the property herein described shall belong to the mortgagors, provided they shall make all payments as they mature, and shall perform the covenants required by them to be performed, but in case of default in any payment, the mortgagees shall have the right, and it is hereby appointed as agent to collect such rents, issues and profits which are hereby assigned and transferred to it, expend any necessary portion thereof for the maintenance and operation of said property, and apply the balance less reasonable costs of collection upon the indebtedness hereby secured, until all delinquent payments have been met, and in case it becomes necessary, it shall have the right to have a receiver appointed to collect and apply such rents.'

"That the said defendants have failed and refused to pay to The Pacific Savings & Loan Association the installments which were due on the said note and mortgage for the months of May, 1927, June, 1927, July, 1927, August, 1927, September, 1927, and October, 1927 and by reason thereof the said The Pacific Savings & Loan Association has threatened to declare the whole of the principal sum of said note and mortgage due and payable and to foreclose the mortgage given to secure the same.

"That in order to avoid the foreclosure of the said mortgage and to protect the mortgage of the plaintiff the plaintiff was compelled to and did pay on the fifth day of October, 1927, to The Pacific Savings & Loan Association the sum of $726.21 on account of the interest due on the said note and mortgage to

September 1, 1927, and has agreed to pay the interest on the said mortgage as it shall accrue and by reason thereof plaintiff has become subrogated to the rights and remedies of the said The Pacific Savings & Loan Association by virtue of the note and mortgage held by it.

"That the defendants have failed and refused to pay the taxes for the year 1926 amounting to $59.80, and the said taxes together with the accrued interest and penalty allowed by law are now delinquent."

In addition to the usual prayer for foreclosure, it was asked that a temporary receiver be appointed to collect the rents, issues and profits from the property and to retain the same subject to the order of the court. It is further prayed that the plaintiff be authorized to collect the rents, issues and profits from the property during the pendency of the suit, and during the period of redemption, and to apply the same to the cost of maintenance of said property as provided in the mortgage to The Pacific Savings & Loan Association.

On October 14, 1927, the plaintiff moved for the appointment of a receiver as prayed for in the complaint, and filed the following affidavit:

"State of Oregon,
"County of Multnomah,—ss.

"I, S. J. Bischoff, being duly sworn, on oath depose and say that I am the attorney for the plaintiff above named and that I am familiar with all facts and circumstances of this case and with all proceedings had and taken herein.

"This suit is brought to foreclose a mortgage upon premises situated at 821 Quimby Street in the city of Portland, County of Multnomah, State of Oregon, which mortgage was given to secure the payment of a note for the sum of $10,000.00; that said note and mortgage are fully and at length set forth in the com-

plaint filed herein, which complaint is referred to and made a part hereof as if herein fully and at length set forth.

"That the aforesaid note was payable in monthly installments of $125.00 each; that the defendants have failed and refused to pay the installments that were due during the months of May, June, July, August, September and October, 1927.

"That the defendants have failed and refused to pay the installments of principal or interest that were due on the first mortgage of $27,500.00 for a period of about eight months, nor have defendants paid any of the taxes on the said property for the year 1926.

"That the real property covered by the said mortgage consists of an apartment house having about fifteen apartments with an average rental of about $500.00 a month; that the present owner of the title, E. S. McKinney, and the preceding owner of the title have, during all of the times herein mentioned, collected the rents and revenues from the said apartment house, but have failed and refused to pay any of the expenses incident to the operation of the same, including the payment of the installments of principal and interest on the first mortgage or principal or interest on the second mortgage or any taxes or other expenses incident to the operation of the property and have failed and refused to pay any of the expenses for the upkeep of the physical condition thereof, but have diverted the revenues therefrom to their own use and by reason thereof the security has become greatly impaired.

"That in order to prevent a declaration of forfeiture on the part of the mortgagee holding the first mortgage the plaintiff was compelled to and did pay the interest that accrued on the said mortgage to September 1, 1927, amounting to $726.21 and will be compelled to pay the interest that will accrue thereon from the said date together with the installments of principal provided for in the mortgage.

"That unless a receiver is appointed to collect the rents and revenues from the said building and manage the same during the pendency of this suit the same will be collected by the defendant, E. S. McKinney, and diverted to his own use without applying the same on account of the charges referred to above.

"That the property covered by the aforesaid mortgages will be insufficient to pay all of the encumbrances against the said property which consist of a first mortgage of $27,500, with accrued interest thereon for a period of about eight months, the second mortgage which is now sought to be foreclosed on which there is a balance of $9,591.89 with interest thereon from April 1, 1927, there is an indebtedness for the cooking ranges installed in the premises, the exact amount of which is unknown to deponent, but I believe the same to be in excess of $750.00, and the unpaid taxes and other disbursements, the amounts of which are unknown to deponent that the sale of the said property on foreclosure will result in a deficit and it is therefore necessary that the rents and revenues from the said premises should be collected and preserved to be applied in liquidation of the operating expenses of the premises and the aforesaid liens.

"I therefore move for an order for the appointment of a receiver of the rents and revenues of the premises described in the complaint during the pendency of this suit."

The motion for the appointment of a receiver was resisted by affidavits too long to be inserted here, but the objections were overruled and Simon Guild was appointed receiver by the court.

The defendant, Mrs. G. N. Nicholas, refused to turn over the rents of the rooms in the building, which was an apartment house, to the receiver Simon Guild, whereupon, he filed an affidavit, which is as follows:

"State of Oregon,

"County of Multnomah,—ss.

"I, Simon Guild, being first duly sworn, on oath depose and say that I am the duly appointed, qualified and acting receiver of the property described in the complaint in the above entitled suit and the rents and the profits thereof pursuant to an order of this court; that I have taken possession of the said property pursuant to the said order of the court; that at the time I took possession of the aforesaid the property was in charge of Mrs. G. N. Nichols who acted as janitor, caretaker and manager of the apartment; that I appointed the said Mrs. G. N. Nichols to collect the rents for me as receiver as they became due upon the various due dates and she undertook to do so and to turn over the collections to me as they were made; that the said Mrs. G. N. Nichols has collected a large sum of money as rents from several of the tenants in the apartments on the said premises but has failed and refused to turn the same over to me and still fails and refuses to turn the same over on the ground that she has been advised by Mr. Everette I. Adcock, one of the attorneys for the defendant E. S. McKinney, that she is not to turn over the collection of rents to me and by reason of such advice refuses to do so.

"That at the time I took possession I exhibited to the said Mrs. G. N. Nichols certified copy of the order to show cause and she is aware of my appointment and has undertaken to act for me in the aforesaid capacity and is fully aware that the rents collected are moneys that are to go into the custody of the court.

"I therefore pray for an order requiring the said Mrs. G. N. Nichols to show cause before this court why she should not be punished for contempt of court for failure to surrender the money collected by her as aforesaid."

Thereupon, the court issued an order requiring Mrs. Nichols to appear before the court on the tenth

day of November, 1927, to show cause why she should not be punished for contempt. There was a demurrer to the affidavit, which was overruled.

Thereupon, Mrs. Nichols filed an answer admitting that Guild was the duly appointed and acting receiver of the property and setting forth that at the time of appointment and thereafter, the respondent in conjunction with her husband G. N. Nichols was acting as manager of the apartment house under the name and style of West View Apartments located on the real property described in said complaint; that subsequent to the appointment of the said receiver certain sums of money were collected by this respondent and her husband in the conduct of said apartment house business and that they have refused to deliver the moneys to the receiver, but denied each and every other allegation in the affidavit of Guild.

The answer also set up the following matters:

"That prior to the appointment of the said receiver, this respondent and her husband G. N. Nichols had the immediate possession and control of an apartment house business known as West View Apartments, then being operated in the apartment house building situated in the real property described in the complaint herein, under and by virtue of a contract with E. S. McKinney, the holder and owner of the legal title of said described real estate of the furniture, furnishings, good will and equipment belonging to and constituting said business. That it was agreed between this respondent, her husband and said E. S. McKinney as part of the terms of said contract that respondent and her husband should have the direct management, supervision and control of said business, and should use their best efforts to protect said property and secure the greatest possible net revenue therefrom by letting the use of the several apartments, furniture and equipment to suitable

and proper persons; and that this respondent and her husband should as compensation for said services receive the use of the furniture and furnishings and equipment as situated in a part of said building designated as 'manager's quarters' together with the further sum of $20.00 a month in cash, plus $5.00 per month for each tenant or customer of said apartment house business in excess of twelve. That at the time said receiver was appointed this respondent and her husband were managing said business and in control and custody of said premises, furniture, furnishings and equipment, under said agreement, and that the same has never been cancelled by agreement or otherwise, and is still in full force and effect.''

The defendant admitted that she had been notified by the receiver that all rents collected from the date of his appointment should be turned over to him, and that all tenants had been notified that all the rents should be paid to Guild, or some person appointed by him.

The answer is too long to give the matters in detail here, but, in our judgment, the main question in this case turns upon the legality of the appointment of the receiver in the first place. If the affidavit and complaint failed to show a jurisdictional right in the court to appoint a receiver, then the appointment was void and Mrs. Nichols was not required to obey it, or to pay any attention to the demand of the receiver that she should pay over the rents of the building to him. The rents and profits were not mortgaged to the plaintiff, but there is a covenant that the mortgagors shall, among other things, pay all taxes, liens or other like encumbrances upon the property and in default of their doing so the plaintiff may pay them and add the amounts thereof to his mortgage.

The statutes of this state provide, among other matters, that a mortgage shall not be deemed as a conveyance so as to enable the owner or mortgagee to recover possession of any real property without foreclosure and sale according to law, and it has been repeatedly held that the mortgagee has no right to cut off the possession of the mortgagor to the mortgaged premises until such time as his title is divested by a perfect foreclosure. This is law everywhere where statutes similar to those of this state are in force: *Couper* v. *Shirley*, 75 Fed. 168 (21 C. C. A. 288); *Fifth Nat. Bank* v. *Pierce*, 117 Mich. 376 (75 N. W. 1058); *Hazeltine* v. *Granger*, 44 Mich. 503 (7 N. W. 74); *Farm Mortgage Loan Co.* v. *Pettet*, 51 N. D. 491 (200 N. W. 497, 36 A. L. R. 598).

1, 2. It is clear from these authorities that plaintiff must be confined to the terms of his mortgage, which provided that he might add the amounts for which the plaintiff mortgagor was delinquent to the amount of his mortgage in the foreclosure. It is claimed, however, that plaintiff was compelled to pay interest on the first mortgage on the property in order to protect his own mortgage and that therefore he has a right to be subrogated to the remedies the owners of the first mortgage would have been entitled to, which, among other things, provided that a receiver might be appointed in case of default. The whole of these provisions will be seen in the statement heretofore made in this case. There can be no subrogation in this case, because the plaintiff did not pay or discharge the whole of the prior mortgage. He only paid interest due at a certain time and no subrogation arises from the payment of a portion of a prior debt or from the payment of accrued interest of a

prior debt: See 2 Jones on Mortgages, Title, "Subrogation," and particularly Section 1122 at page 577; also, Section 1132. So we are clearly convinced that neither the complaint nor the affidavit of Guild were sufficient to authorize the court to appoint a receiver, and that the appointment was absolutely void. Being a mere nullity, the defendant here was not bound to obey it. Neither was McKinney the owner of the property.

3, 4. The defendant seems to have been the manager of the apartment house with the right to share a portion of the rents and profits under certain circumstances, and to keep a room therein, and therefore, showed such interest as would justify her in refusing to pay over the money to the receiver. In fact, under the circumstances, should defendant have done so, she might have made herself liable in an action by McKinney, who was entitled to such rents and profits until foreclosure and sale. The fact, that she had first appeared to recognize Guild's authority and agreed to turn the rents over to him, cannot cut any figure. If, upon being further advised, she found, which is a fact, that he had no right to them, she is not estopped to reconsider her promise to turn over money to an alleged receiver, who had no right to receive it. She is not such a stranger to this proceeding that she cannot be heard to assert her rights to protect herself from possible litigation.

5. It is claimed that there should be a bill of exceptions in this case, but it is evident that this case was tried out purely on the affidavits of the parties, and that no oral testimony was taken. So it is sufficient, if pleadings and affidavits, which are matters of record in the court below, were brought up without

embodying them formally in a bill of exceptions, but upon what answers for pleadings without any further affidavits in the matter at all, we find that there was nothing to invoke the procedure of the court to appoint a receiver in the first place.

The judgment of the lower court is reversed and this proceeding dismissed.

REVERSED. REHEARING DENIED.

COSHOW, C. J., and RAND and ROSSMAN, JJ., concur.