Motion to dismiss appeal denied February 3; argued and submitted
on merits June 3; reversed September 15; rehearing
denied December 22; motion to strike cost bill
denied December 22, 1931

McKINNEY *v.* NAYBERGER ET AL.

(295 P. 474, 2 P. (2d) 1111, 6 P. (2d) 228, 229)

S. J. *Bischoff,* of Portland, for the motion.

*Everett I. Adcock* and *James H. Ganoe,* both of Portland, opposed.

BEAN, C. J. The respondent moves to dismiss this appeal upon the ground that the appeal has been abandoned by the appellant. The record, *inter alia,* discloses the following facts: The judgment appealed from was rendered June 30, 1930. At that time appellant gave notice in open court of an appeal to this court, which was afterwards, on September 3, 1930, entered nunc pro tunc as of June 30, 1930. On July 8,

1930, appellant filed an undertaking on appeal. No objections to the undertaking were filed. The appeal therefore became perfected July 14. Plaintiff had thirty days from that date within which to file the transcript in this court: Oregon Code 1930, § 7-507. Within that time and on August 1, an order was entered in the circuit court extending the time within which the appellant could file his transcript on appeal to and including the 15th of September, 1930. On September 12, 1930, appellant filed his transcript of record in this court.

Taking these facts by themselves there can be no question that the transcript was filed in time and the proceedings thus far were regular.

We now come to the controversial matters. By reason of the notice of appeal given on June 30, 1930, not having been entered at that time, appellant thereafter, on August 26, 1930, served and filed a new written notice of appeal, and on August 30, 1930, plaintiff served and filed another undertaking on appeal.

It is well settled that when a party abandons an appeal by allowing the time in which the transcript may be filed to expire without having filed such transcript, the appeal will be dismissed as abandoned: *Ogden v. Hoffman,* 88 Or. 503 (172 P. 503); *Hill v. Lewis,* 87 Or. 239 (170 P. 316); *Columbia City Land Co. v. Ruhl,* 70 Or. 250 (134 P. 1035); *Moon v. Richelderfer,* 56 Or. 246 (108 P. 178); *Nestucca Wagon Road Co. v. Landingham,* 24 Or. 439 (33 P. 983). Nevertheless, until an appeal is perfected, it may be abandoned and a new appeal taken: *Van Auken v. Dammeier,* 27 Or. 150 (40 P. 89); *Holladay v. Elliott,* 7 Or. 483.

 

Here, however, it is seen that the transcript on appeal was filed within the time allowed by law, computing such time from the time of the giving of the notice of appeal in open court.

█ We think the fact that the appellant filed the second notice of appeal, which could not avail him, did not vitiate the first notice of appeal or render the proceedings ineffective. No case comes to our attention where, by reason of two notices of appeal and the filing of a transcript within the proper time under the first notice of appeal, the appeal has been considered as abandoned. In short, the appellant was attempting to perfect his appeal instead of abandoning it when he filed the second superfluous notice of appeal. The trial judge, as we understand, was away on a vacation at the time the second notice of appeal was filed as an attempted precaution.

The motion to dismiss the appeal is therefore denied.

ON THE MERITS
(2 P. (2d) 1111)

*Everett I. Adcock* and *James H. Ganoe,* both of Portland, for appellant.

*S. J. Bischoff,* of Portland, for respondents.

This is an appeal from a judgment of involuntary nonsuit entered by the circuit court in an action wherein the complaint alleged that in a suit for the foreclosure of a mortgage instituted by the defendant Nayberger, as plaintiff, against this plaintiff, Nayberger prayed for and wrongfully obtained the appointment of this other defendant Guild as the receiver of a parcel of improved income-producing real property owned by the present plaintiff. The complaint in the present action alleges that, after the circuit court had appointed Guild, this court held void the circuit court's order, and that as a result of the wrongful receivership the plaintiff sustained damages in the sum of $25,550.

ROSSMAN, J. The only facts of which we need take notice are: The plaintiff owned a parcel of improved income-producing real property in Portland, encumbered with two mortgages, the second of which was owned by the defendant Nayberger; the latter instituted a suit for the foreclosure of his mortgage and moved for the appointment of a receiver; after appropriate service had been made upon McKinney (this plaintiff, but defendant in that suit), McKinney opposed the application; thereupon a hearing was had in the circuit court and the petition was allowed; the circuit court fixed the receiver's bond in the sum of $1,000, but demanded no undertaking in McKinney's favor in the event it should develop that the receivership was improperly allowed; Guild qualified for his office, and took possession of the property, which was an apartment house; when a Mrs. Nichols, who was McKinney's agent in charge of the property, refused to recognize Guild's authority and refused to pay to him rent she continued to collect from the tenants, Guild caused her to be cited for contempt of court by

the circuit court; upon the hearing she was adjudged guilty; thereafter Guild collected the rents which included a charge for the use of the furniture belonging to McKinney; Guild, upon taking possession, requested the plaintiff to move this furniture out of the building; the plaintiff declined to do so, protesting Guild's possession; these furnishings were not subject to the mortgage, were free from all encumbrances, and were not mentioned in the order appointing Guild; the latter remained in possession as receiver for approximately 17 months' time; the receivership was terminated when this court in *State ex rel. Nayberger v. McDonald,* 128 Or. 684 (274 P. 1104), being an appeal by the aforesaid Mrs. Nichols from the order of the circuit court which had adjudged her guilty of contempt, held: "The appointment (of Guild as receiver) was absolutely void. Being a mere nullity, the defendant here was not bound to obey it. Neither was McKinney the owner of the property." McKinney never appealed from the order which granted the receivership and that order has not been vacated.

■ The complaint in the present action alleged that the order appointing Guild receiver "was wholly void in that said circuit court was without jurisdiction," but contained no allegations of malice and the absence of probable cause. The answer avers that before Nayberger applied to the court he had stated fully all of the facts to his attorney, obtained his advice, and acted throughout in good faith. The plaintiff does not contend that the proof disclosed malice or bad faith.

The defendant contends that, since the aforementioned allegations are absent from the complaint and since the proof fails to disclose malice, the judgment of the circuit court must be affirmed. He calls to our

attention *Mitchell v. Silver Lake Lodge,* 29 Or. 294 (45 P. 798), and *Hess v. German Baking Co.,* 37 Or. 297 (60 P. 1011). In the first of these cases this court held that a defendant whose property had been wrongfully attached could not recover damages against the plaintiff without alleging and proving that his adversary was actuated by malice and acted without probable cause when he procured the writ, unless the action was upon the attachment bond. The decision pointed out: "Upon the termination of a civil action in favor of the defendant, the costs and disbursements awarded him by law are considered to be an adequate compensation for his injury, and sufficient punishment of the plaintiff for prosecuting an unfounded claim." Accordingly, the court concluded that in any action to secure further compensation, not founded upon the bond, the plaintiff must prove malice and the lack of probable cause. Section 4-403, Oregon Code 1930, provides that a plaintiff shall be entitled to a writ of attachment upon filing his affidavit and an undertaking to the effect "the plaintiff will pay all costs that may be adjudged to the defendant, and all damages which he may sustain by reason of the attachment, if the same be wrongful or without sufficient cause * * *." The second of the two above cases, which also was a common law action, was dismissed for like reasons, the court holding that no liability existed in the absence of proof of malice and want of probable cause. Section 6-402, Oregon Code 1930, provides that before the allowance of a writ of injunction "the court or judge shall require of the plaintiff an undertaking * * * to the effect that he will pay all costs and disbursements that may be decreed to the defendant, and such damages, not exceeding an amount therein specified, as he may sustain by reason of the injunction if the same

be wrongful or without sufficient cause." Our code contains no provision for the exaction of a bond from one who applies for a receivership.

The defendants contend that the reasoning employed by the two above cases is equally applicable to our present problem, whereas the plaintiff insists that where the writ which appointed the receiver is subsequently declared void the receiver and the party who . petitioned for the appointment are both liable to the injured individual as trespassers ab initio.

In further support of their position, the defendants have called to our attention *Riner v. Ramey-Milburn Co.,* 166 Ark. 221 (265 S. W. 963). In that case the complaint alleged that one Sevick owned a large quantity of property which he conveyed to the plaintiff; that later the defendants sued Sevick on divers account and alleged that Sevick's conveyance to the plaintiff was fraudulent; that they obtained the appointment of a receiver of Sevick's property, including that which Sevick had conveyed to the plaintiffs; that the receiver went into possession; that this plaintiff filed an answer in that suit; and that subsequently upon the trial the court found that its action in appointing the receiver was unwarranted. The action of the lower court in sustaining a demurrer to the complaint was affirmed on appeal; we quote from the decision thus:

"To be sure, in those jurisdictions where the statute requires the execution of a bond, by the party applying for a receiver, to pay all damages growing out of the wrongful appointment of such receiver, such damages are recoverable in an action on the bond, and it is not necessary in such cases to prove that the action in which the receiver was appointed, and the appointment of the receiver, was malicious, and without probable cause. [Cites cases.]

"But in jurisdictions like ours, where there is no such statute, and where there is no law forbidding the appointment of a receiver without bond, and where the matter of the appointment of such a receiver depends entirely upon the discretion of the court, judge, or chancellor, there can be no liability for damages growing out of the appointment of a receiver, in the absence of allegations and proof to the effect that the appointment was sought and obtained maliciously, or without probable cause. In the absence of a statute requiring the party applying for a receiver to pay damages growing out of a wrongful appointment, the action against a party wrongfully procuring the appointment of a receiver is likened to that accruing on the dissolution of an improperly procured injunction."

But see *K. C. Oil Co. v. Harvest Oil & Gas Co.,* 80 Okl. 61 (194 P. 228), and *Wagoner Oil & Gas Co. v. Marlow,* 137 Okl. 116 (278 P. 294), in both of which the court declared that a recovery could be had without proof of malice and the absence of probable cause, even though the statutes of Oklahoma made no provision for the execution of a bond to indemnify the defendant in the event the receivership was found to be unwarranted. The authority of *Riner v. Ramey-Milburn Co.,* supra, is seriously impaired by its later holding in *Bank of Shirley v. Bonds,* 178 Ark. 1079 (13 S. W. (2d) 816), where the court again had before it the question of the allowance of damages to one who had been injured by a wrongful receivership, but who had not succeeded in proving malice and the absence or probable cause. The court sustained the allowance of recovery, justifying its action, thus: "The court found in the instant case, upon testimony that justified the finding, that no ground or necessity existed for the appointment of the receiver, which was tantamount to finding that the appointment was obtained without probable cause, and inferably with malice."

The plaintiff calls to our attention *Thornton-Thomas Co. v. Bretherton,* 32 Mont. 80 (80 P. 10). The complaint in that action alleged that the application for the appointment of the receiver was made maliciously and without probable cause. While the Supreme Court did not so declare, nevertheless, it seems from its statement concerning the evidence that the allegation just mentioned was possibly supported by proof. But the court in sustaining the recovery held that the aforementioned allegations of the complaint were "surplusage." After an extensive review of the authorities, it expressed itself thus:

"Under the authorities, John D. Thomas, Bretherton, and the receiver were trespassers ab initio, and their acts particularly described in the complaint cannot be justified. The plaintiff does not demand as damages interest, prospective profits, or exemplary damages, and the allegations of the complaint concerning the extent of the business of the company, or the conduct of said trespassers tending to show fraud, oppression, or malice, must be treated as surplusage."

Plaintiff also cites *K. C. Oil Co. v. Harvest Oil & Gas Co.,* supra, wherein the trial court granted the plaintiff a judgment for $2,000 damages against a defendant who, as plaintiff, had wrongfully secured the appointment of a receiver. Although the evidence possibly was capable of supporting a finding that the application for the receivership was the result of a desire to improperly secure possesion of the involved property, the court clearly stated that it was unnecessary to allege malice and the absence of probable cause, thus:

"Persons who wrongfully procure the appointment of a receiver, become, after the appointment is judicially declared void, trespassers ab initio, and liable

for the damages caused by their wrongful acts. It is not necessary, in order to recover damages for wrongfully procuring the appointment of a receiver, to show that the appointment was procured maliciously, and without probable cause. In an action for damages for wrongfully securing the appointment of a receiver, the general rules as to burden of proof and admissibility of evidence in civil actions apply. Plaintiff is entitled to all damages which he may sustain by reason of such appointment, and in determining the measure of damages it is proper to consider the injury to plaintiff's possession during the period of the receivership, the amount of good and collectable accounts lost by reason of the receivership, and the value of the services of counsel employed to procure the vacation of the order appointing the receiver.''

The above language is quoted with approval in *Wagoner Oil & Gas Co. v. Marlow,* supra.

The plaintiff also calls to our attention *Bowman v. Hazen,* 69 Kan. 682 (77 P. 589), wherein the order appointing the receiver extended the receiver's authority over not only the property involved in the litigation but also over an additional parcel. The receivership was subsequently vacated as being wrongful. Recovery was sustained although the proof did not indicate malice. In *Cecil v. Cecil's Ex'rs & Trustees,* 188 Ky. 700 (223 S. W. 1092), the court, without demanding proof of malice and the absence of probable cause, sustained the right to recover rents and profits from a receiver who had acted under a void appointment. In *Haverly v. Elliott,* 39 Neb. 201 (57 N. W. 1010), which was an action upon the undertaking, the court said: ''The judgment of the court that this receiver was wrongfully appointed put Mr. Haverly and the receiver in the position of trespassers.'' See also *Joslin v. Williams,* 76 Neb. 594 (107 N. W. 837, 112 N. W. 343). In

*Strum v. Blair,* 182 Ill. App. 413, the court, after quoting from the statute which made provision for an indemnity bond upon the application for a receivership, held:

"Counsel for plaintiff in error insists that the section quoted only applies in cases where bond is given, as required by that section. That is a mistake. The giving of the bond does not create the liability as to the principal. It merely secures the payment of the damages. It is the wrongful procurement of the appointment of the receiver that creates the liability. High on Receivers (4th Ed.) sec. 10, likens the appointment of receivers to injunction proceedings, and our Supreme Court, in *Kohlsaat v. Crate,* 144 Ill. 14 [32 N. E. 481], holds that liability for solicitor's fees on dissolution for injunction arises from the wrongful suing out of the injunction and not from the giving of the bond, and is recoverable from the complainant whether bond is given or not, and regardless of the amount of the bond, if one is given. *The Liquid Carbonic Acid Mfg. Co. v. Convert,* 186 Ill. 334 [57 N. E. 1129], and *Smith v. Michigan Buggy Co.,* 175 Ill. 619 [51 N. E. 569, 67 Am. St. Rep. 242], are not in point under the facts in this case. In the Convert case, supra, no receiver was appointed, the application therefor being successfully resisted, and the Smith case, supra, was for malicious prosecution. In the case at bar, the liability does not depend on whether the prosecution of the foreclosure case was malicious or not. The receiver was in fact appointed and the order therefor afterwards revoked on motion."

The above seem to be the only cases which are capable of assisting directly in the solution of the problem before us. We believe that a distinction of consequence exists between the situation developed by a wrongful attachment or injunction and that brought about by a wrongful receivership. When it develops that the writ under which the receiver has taken possession is void, he is left without warrant for the acts

which now appear as trespasses. It is our conclusion that an action of this character may be maintained even though the plaintiff is unable to submit proof of malice. When it develops that the appointment is void and inflicted injury upon the individual who was deprived of his property, the action is maintainable. As previously indicated, this court in *Nayberger v. McDonald et al.,* supra, held the receivership void.

■ It is next contended that since the circuit court did not vacate the order which appointed Guild as receiver, and since McKinney never appealed from that order, the present action could not be maintained. Defendant maintains that this constitutes an unwarranted collateral attack upon the order which appointed Guild. However, in *Nayberger v. McDonald,* as we have already pointed out, our decision held that the order for the receivership was "absolutely void * * * a mere nullity." Our decision pointed out that the order for the receivership disregarded the statutory limitations upon the court's authority to appoint a receiver. In fact, Mrs. Nichols' attack upon the order was a collateral one itself. We have, however, again examined the issue and remain satisfied with the conclusion expressed in our above decision.

It is evident from the authorities above cited that the conduct of these defendants was that of trespassers and that they are liable accordingly. It likewise follows from the foregoing that the judgment of the circuit court was in error. We deem it unnecessary to express an opinion concerning the other matters argued in the briefs. The judgment of the circuit court will be reversed.

BEAN, C. J., RAND and KELLY, JJ., concur.

Petition for rehearing denied December 22, 1931

ON PETITION FOR REHEARING
(6 P. (2d) 228)

*Everett I. Adcock* and *James H. Ganoe,* both of Portland, for appellant.

*S. J. Bischoff,* of Portland, and *Lawrence T. Harris,* of Eugene, for respondents.

ROSSMAN, J. The excellent argument advanced in respondents' brief, accompanying their petition for a rehearing, has caused us once more to give extended consideration to this cause. We are persuaded, however, that the statement of our conclusions should be brief. Two contentions are pressed upon us: (1) that in the absence of an allegation in the complaint averring that the suit wherein the receiver was appointed was prompted by malice and lacked probable cause, no cause of action was stated; (2) that the order appointing the receiver was not subject to collateral attack.

■ Although we have again considered every phase of the above contentions, we shall not again express our views upon any part of the first proposition except upon the argument which insists that no distinction in principle exists between the effect created by an order of court taking possession of a litigant's property by a receivership and the situations created by the levy of an attachment or the service of a writ of injunction. Based upon the contention that all three of these ancillary orders are in effect the same, the respondents argue that our holdings in *Mitchell v. Silver Lake Lodge,* 29 Or. 294 (45 P. 798), and *Hess v. German Baking Co.,* 37 Or. 297 (60 P. 1011), both of which cases were considered in our previous decision, control the outcome of this action. In the first of these

two cases a writ of attachment was involved; in the second, a writ of injunction. In both the main action failed, and in both this court held that the successful defendant must be content with statutory costs and disbursements as full compensation for the wrong imposed upon him by the unjustifiable writ unless he could allege and prove that the plaintiff, in procuring its issuance, was prompted by malice and acted without probable cause. If, in principle, all three writs are substantially alike, it would follow that the party wronged by a receivership must also be content with costs unless able to prove malice and the lack of probable cause. But we do not believe that the writs are alike in principle. From section 15, High on Receivers (4th Ed.), wherein the writer is referring to a receivership, he states: "It changes the possession as well as the subsequent control and management of the property. A court of equity by an injunction ties up the hands of defendants, and preserves unchanged not only the property itself, but the relations of all parties thereto. But in appointing a receiver the court goes still further, since it wrests the possession from the defendant and assumes and maintains the entire management and control of the property or fund, frequently changing its form, and retaining possession through its officer, the receiver, until the rights of all parties in interest are satisfactorily determined." From Clark, The Law of Receivers, section 31, we quote: "A receiver will not ordinarily be appointed when the court by the less drastic remedy of granting an injunction can adequately protect the rights of the complainants. The appointment will never be made where there is another safe remedy, or where the court can find a less stringent means of protecting the rights of the parties. A receiver should not be appointed at

any stage of the proceedings if any other remedy will afford adequate protection to the party applying.''

██ A receivership is unavailable where the party is entitled to a writ of attachment: *American Freehold Land Mortgage Co. v. Turner,* 95 Ala. 272 (11 So. 211). It is frequently said that the appointment of a receiver will not be made except in the case of imperative necessity: 34 Cyc., Receivers, page 23. The courts take notice of the fact that business institutions, especially those financial in character, rarely survive a receivership: *State ex rel. v. Peoples United States Bank,* 197 Mo. 574 (94 S. W. 953) ; *Joseph Dry Goods Co. v. Hecht,* 120 Fed. 760. A writ of attachment merely impresses a lien upon the defendant's property, and a writ of injunction interferes with the control which the defendant would ordinarily exercise over his property or conduct, but the purpose of a receivership is to exceed the effectiveness of both of these writs by taking the custody of property away from the defendant and placing it in charge of the court's officer.

The foregoing will have to suffice as a statement of the distinction which we believe exists between the character and effect of a writ appointing a receiver and the writs of attachment and of injunction.

As stated in our previous decision, the individual appointed receiver is no more than a trespasser when it develops that the writ which created his office and appointed him as the incumbent was a nullity. In fact, in our belief the present action is one of trespass rather than an action of malicious prosecution.

█ The second contention again argued by the respondents submits that, since the order appointing Guild receiver has never been set aside by the circuit court nor reversed upon appeal, it is immune from this collateral attack. In *State ex rel. Nayberger v. Mc-*

*Donald,* 128 Or. 684 (274 P. 1104), we held that the order appointing a receiver, and naming Guild, was void because a receivership of that character was not authorized by section 32-702, Oregon Code 1930. We remain satisfied that the circuit court, although it is a court of general jurisdiction, was not granted by the statute the power to enter that order. If a court, having the necessary jurisdiction over the subject-matter, merely violates its duty and appoints a receiver when better judgment would have dictated a contrary course, the order is not void and is not subject to collateral attack, but when a court not only violates its duty but enters an order where it lacks jurisdiction, a contrary result follows. It is our opinion that, since the order which named Guild was beyond the jurisdiction of the circuit court, it is subject to collateral attack. In arriving at this conclusion, we have been much persuaded by the scholarly review of the subject in *State v. District Court,* 33 Wyo. 281 (238 P. 545), wherein that tribunal concluded, after an extended review of the decisions, that if the measure of the court's authority is dependent upon and limited by a statute, a judgment which by the face of the record is shown not to be in substantial compliance with mandatory provisions of the statute, but contrary to its limitations, is void and subject to collateral attack. Numerous authorities accompany the Wyoming decision. We have read many of them and believe that they, together with reason, support the conclusion. Since we are of the opinion that the order authorizing the receivership exceeded the express limitations of our statutes authorizing such relief, we remain content with the conclusion previously expressed that the order is subject to collateral attack.

It follows from the above that the petition for rehearing will be denied.

BEAN, C. J., RAND and KELLY, JJ., concur.

Motion to strike cost bill denied December 22, 1931

ON MOTION TO STRIKE COST BILL

(6 P. (2d) 229)

ROSSMAN, J. In the opinion in this case heretofore announced, the judgment of the circuit court was reversed and no specific order was made as to costs and disbursements. The appellant later filed a cost bill containing items aggregating $334, and the respondents have moved to strike it from the files on the ground that our laws do not contemplate the allowance of costs upon a reversal unaccompanied with the entry of a final judgment.

■ Costs are purely statutory. At common law they were unknown, were not recoverable, and were not adjudged in the judgment of a case: *Garrett v. Hunt*, 117 Or. 673 (244 P. 82, 245 P. 321); *In re Will of Pittock*, 102 Or. 159 (199 P. 633, 202 P. 216, 17 A. L. R. 218); *Cunningham v. Friendly*, 76 Or. 16 (147 P. 752); *State ex rel. v. Estes*, 34 Or. 196 (51 P. 77, 52 P. 571, 55 P. 25); *Wood v. Fitzgerald*, 3 Or. 568; 7 R. C. L., Costs, p. 781, § 2; and *Lehigh Valley Railroad Co. v. McFarland*, 44 N. J. Law 674. Section 7-605, Oregon Code 1930, provides: "Costs, when allowed to either party, are as follows: (1) In the Supreme Court, on an appeal, to the prevailing party, $15; (2) * * *." Section 7-612 provides: "When costs are allowed to the prevailing party on appeal to the Supreme Court the appearance fees, trial fees, attorney fees, as provided by law; * * * shall be taxed in the Supreme Court as costs of the appeal."

■ Respondents argue that these sections of our laws do not direct the allowance of costs, but merely control their amount when they are recoverable by virtue

of some other section of our statutes. We have found no other section of our laws which is applicable. In actual practice, as is evidenced by the following citations, costs covering the expenses incurred upon the appeal are generally allowed to the prevailing party upon a reversal in this court unaccompanied with a final judgment: *State v. Edmunson,* 120 Or. 297 (249 P. 1098, 251 P. 763, 252 P. 84); *Fischer v. Bayer,* 108 Or. 311 (210 P. 452, 211 P. 162, 216 P. 1028); *Shaughnessy v. Kimball,* 106 Or. 587 (212 P. 485, 213 P. 135); *Burdick v. Tum-A-Lum Lumber Co.,* 97 Or. 459 (191 P. 654). But see *Dippold v. Cathlamet Timber Co.,* 98 Or. 183 (193 P. 909), and *Levine v. Levine,* 95 Or. 94 (187 P. 609). The rule generally applied where reversals are ordered and the cause is remanded for new trial is that the allowance of costs incurred in the lower court must await the result of the trial which will eventually settle the controversy, but the costs following the entry of judgment in the lower court, and terminating with a reversal, are allowed to the appellant. The cases are collected in 15 C. J., Costs, p. 246, § 606; 7 R. C. L., Costs, p. 804, § 33.

Believing as we do that the above cited sections of our laws warrant the allowance to the appellant of the costs and disbursements incurred since the entry of judgment in the circuit court, and rendered necessary by the appeal, we conclude that the motion to strike should be overruled.

BEAN, C. J., RAND and KELLY, JJ., concur.