Argued January 24; modified February 19; rehearing denied
April 16; objections to cost bill sustained in part May 14, 1935

EMPIRE HOLDING CORPORATION *v.*
COSHOW
(41 P. (2d) 426, 43 P. (2d) 907, 45 P. (2d) 167)

*Dexter Rice,* of Roseburg (Manning & Harvey, of Portland, and Rice & Orcutt, of Roseburg, on the brief), for appellant.

*F. M. Phelps,* of Portland (Phelps & Burdick, of Portland, on the brief), for respondent.

BAILEY, J. The complaint in this cause was filed in the name of the Empire Holding Corporation, a corporation, by its receiver, to recover from the defendant, O. P. Coshow, on a promissory note signed by him,

dated November 14, 1930, and payable five years after date to United States Holding Company (which later changed its name to Empire Holding Corporation), with interest at the rate of seven per cent per annum. This note originally was for $20,000 and, according to the allegations of the complaint, no part of the principal or interest had been paid except the sum of $2,000.

The answer, after admitting certain allegations of the complaint and denying others, sets forth affirmative averments by which equitable relief is sought through the cancellation of the note sued upon. The defendant in his affirmative answer alleges that he was induced to purchase 200 shares of the capital stock of the corporation and ''to give in payment therefor his promissory note in the sum of $20,000 payable five years thereafter'', through representation made to him by the corporation that upon his purchase of said stock it would enter into a contract with him to engage his services for a period of ten years and pay therefor the sum of $7,500 for each of the first two years and a substantially larger salary for the remainder of the period, and through the corporation's representations that it had been organized by a number of wealthy and experienced insurance men, five of whom had each subscribed for 200 shares of the capital stock of the corporation, had agreed to pay therefor the sum of $20,000 and were financially able to pay that amount; that he relied upon the said representations made by the corporation and believed the same to be true; that on or about November 14, 1930, he accepted the offer and entered into such contract of employment and did on said date, pursuant to his agreement with the corporation, subscribe for 200 shares of the capital stock of the corporation and did ''give his promissory note in payment therefor in the sum of $20,000''; that the

representation as to the financial ability of the five men interested in the corporation to pay for stock subscriptions was false and known to be false by those making it; and that not any of the said five men have paid for their stock.

Defendant's answer further avers that he entered upon his duties pursuant to his contract on January 5, 1931, and continued in that employment until December 7, 1931, and that the corporation during said period had credited him with the sum of $5,843.50 upon said note, earned by him during said time, but had failed to credit him with the further sum of $2,456.50 as further allowance for salary earned by defendant prior to December 7, 1931, for which he should be given credit; and that defendant had paid on said note and had been given credit therefor the additional sum of $5,000, making a total of $13,300 for which he should be credited on the note. The answer further alleges that said stock had never been transferred or delivered to defendant or to any one else for him; that the corporation was wholly unable to issue and deliver said stock or any part thereof; that the corporation had without his knowledge, acquiescence or consent procured subscriptions for its stock from various individuals, by means of fraudulent representations; that later a receiver was appointed for the corporation without defendant's knowledge, acquiescence or consent and proceeded to liquidate the affairs of the corporation, which had ceased to carry on the business for which it was organized; and that, by reason of the facts alleged, defendant had received no consideration for said note.

The reply affirmatively charges that the defendant and others in the consummation of the contract between the defendant and the corporation, as well as contracts between the corporation and its other directors, and

by other acts, had defrauded future purchasers of the corporation's stock. It further avers that the note was given by the defendant on November 14, 1930, and the defendant "thereafter became a director, president and manager of said corporation and had full and complete knowledge of all matters, conditions and things surrounding the execution and delivery of said note".

On the trial of the case the defendant, prior to the introduction of any evidence by the plaintiff, proceeded in an attempt to substantiate the allegations of his answer. On the stand he frankly admitted that there was no fraud in the obtaining of the note from him by the corporation, and that there was no misrepresentation as to the financial ability of the other directors to pay for their stock. He testified, however, that it was represented to him that the plaintiff corporation was organized as a holding company with the expectation of forming several subsidiary companies for the purpose of doing insurance business; and that he had been induced to sign the note on the representation that the plan for organizing and operating these subsidiary companies would be carried out by the plaintiff corporation.

The promissory note signed by the defendant was by him introduced in evidence. It contained endorsements on the back thereof as follows:

| "Dec. 18, 1930 | Paid | 800.00 |
| Jan. 5, 1931 | " | 1200.00 |
| Apr. 30, 1931 | " | 3000.00 |
| Oct. 13, 1931 | On principal | 4256.00 |
| | Int. to Oct. 14th/31 | 962.50 |
| Nov. 1, 1931 | Principal | 589.50 |
| | Int. | 35.50 |
| | Total paid | 9845.50 |
| 11/1/31 | Balance | 10,154.50" |

The defendant further testified that these endorsements were made on the note by the treasurer of the corporation. The evidence is undisputed that the first two payments, aggregating $2,000, were credited for cash paid by the defendant. The third item, $3,000, was, according to defendant's testimony, a sales commission on the 200 shares of stock purchased by him and rebated to him by C. J. Keller, who had a contract with the corporation for 15 per cent commission on all stock which he sold. The remaining credits were for payments to defendant on salary, on his contract with the corporation.

On December 7, 1931, the existing board of directors retired and a new board was elected, which conducted the affairs of the corporation until a receiver was appointed on May 5, 1932. No further claim was made by the defendant after December 7, 1931, on account of his salary contract, and no action was taken by the new board of directors toward repudiation of the credits endorsed on defendant's note.

The capital stock of the corporation was 50,000 shares of no par value. In order to organize, 24,998 shares were subscribed for by W. R. Adams at a par value of $100 each, and two other individuals subscribed for one share each, at the same valuation.

On October 15, 1930, a stockholders' meeting was held and Adams and the other two subscribers were elected directors of the corporation. On the same date a directors' meeting was held, at which George Robison was elected president and the other two directors were named vice-president and secretary, respectively. At the directors' meeting the officers were authorized to enter into a contract with C. J. Keller for the sale of stock of the corporation.

At a meeting of the stockholders held on November 13, 1930, the number of directors was increased from three to seven, and the defendant and three others were elected directors. On the same date a meeting of the directors was held and the defendant was elected president and executive chairman of the corporation. A resolution was then passed reciting that, whereas W. R. Adams had theretofore subscribed for 24,998 shares of stock, the stock so subscribed for by him should be the first disposed of and that it should be sold for $100 per share; also that "upon furnishing promissory notes by the board of directors for the stock subscribed by them said note shall be accepted as payment for stock in an amount not to exceed 200 shares. This to apply to all directors who subscribe for this amount prior to January 1, 1931". At the same meeting the officers of the corporation were authorized "to accept and enter into such contracts as they saw fit for the employment of general manager, executive chairman, general counsel, sales director and medical director".

The contract between the defendant and the corporation was dated "November ......, 1930," and was executed on behalf of the corporation by George Robison as president and W. R. Adams as secretary. By the terms thereof the defendant was employed as executive chairman for a period of 10 years at a stipulated salary as alleged in the answer.

The minutes of the corporation fail to disclose when the defendant assumed his duties as a director and as the president of the corporation. However, in an application to the corporation commissioner for permission to sell stock the defendant on November 14, 1930, verified the same as president of the corporation and was therein listed as president and the owner of 200

shares of non-par stock for which $20,000 in actual money had been paid. The defendant continued to act as director and president of the corporation until December 7, 1931, and voted at all or practically all the numerous stockholders' and directors' meetings held in the interim.

Under date of May 18, 1931, there was issued to the defendant a certificate of 200 shares of the capital stock of the Empire Holding Corporation, which certificate was signed by himself as president and by the secretary. It is claimed now by the defendant that this certificate was never delivered to him, but we have found nothing in the record to support this contention, nor is our attention called to any evidence which would prove non-delivery of the certificate.

At the close of the testimony relative to the equitable defense the trial court ruled that the evidence was insufficient to prove the allegations of fraud and failure of consideration. The trial judge then stated that the only matter remaining to be determined by him was the amount of credit to be allowed on the note and whether that question should be decided by him "sitting as a court of equity or before a jury". To this, counsel for plaintiff replied: "We desire to dispose of it before the court, the court having taken jurisdiction of the matter." The question was finally disposed of by a decree dismissing the defendant's equitable answer and entering judgment against the defendant for the full face of the note, together with interest and attorneys' fees, less $2,000 paid in cash on the note by the defendant.

Inasmuch as the case was tried on the theory that since equity had acquired jurisdiction of the matter it should retain jurisdiction until the final determination

of the issues, we shall consider the case accordingly and treat the appeal here as a trial *de novo*.

The theory of plaintiff's action is that the note given by the defendant was executed in payment of the purchase price of 200 shares of stock in the plaintiff corporation, whereas the defendant argues that the note was not given or received in payment but was given as evidence of the amount due from him on his subscription for the stock. On this premise the defendant contends that he is liable on the balance of his subscription for only so much thereof as is necessary to pay his *pro rata* share of the claims of creditors, and that the plaintiff has failed to show that the assets of the corporation on hand are not sufficient to meet all claims against the corporation.

■ It is apparent from the record that the note involved in this litigation was given by the defendant and received by the corporation as payment for 200 shares of capital stock. This stock was a part of the block which had originally been subscribed for by Adams. The corporation, by the resolution already referred to, agreed to accept the note of each of the directors in payment for such stock so subscribed for by Adams to the extent of 200 shares each. By article V, § 1, of the bylaws of the corporation no certificate for stock was to be issued until the same had been paid for in full. The issuance of the certificate for 200 shares of stock to the defendant is evidence that the stock represented thereby was paid for in full by the acceptance of defendant's note.

Section 25-210, Oregon Code 1930, provides that every stockholder who has subscribed for stock is entitled to one vote for each share of stock subscribed for by him, at the first meeting of the corporation, "but after such first election of the directors, no person shall

vote on any share upon which any installment, or portion thereof, is then due and unpaid''. The record fails to disclose any subscription signed by the defendant for stock of the corporation. The principal of the note, if interest were paid when due, would not mature until five years after date, which is a further indication that the note was given and received as payment rather than as evidence of the amount owed on some subscription signed by the defendant. We have in addition to the above facts the statements in defendant's pleadings to the effect that the note was given in payment for the stock.

■ Unless prevented by some provision of the articles of incorporation or statutory restrictions, a corporation may take in payment for stock the promissory note of the subscriber or purchaser or of a third person: 14 C. J., p. 439, § 600; Fletcher's Cyclopedia Corporations, Vol. 5, p. 5825, § 3512; *American National Bank v. Kerley*, 109 Or. 155 (220 P. 116, 32 A. L. R. 262). Since the defendant stands in the position of a debtor to the corporation and not that of a subscriber for unpaid stock, his contention that he should be required to pay on the note only his *pro rata* share toward the claims of creditors of the corporation is untenable.

We need not here concern ourselves with the averments of the answer as to alleged misrepresentations regarding the financial ability of the directors other than the defendant to pay for the stock subscribed for by them, inasmuch as the defendant admitted on the stand that there was no fraud in connection with any such statements and this point is not urged by him on this appeal.

■ The defendant does, however, contend that there has been a failure of consideration in that the purposes

for which the corporation was organized were not carried to fruition. In this respect the defendant took the same chance that all other stockholders did, speculating on the ability of the corporation to sell enough stock to organize and carry on the contemplated subsidiary companies. The failure of a corporation to pay dividends does not warrant a purchaser of its stock to defeat collection of a note given in payment therefor, where there was no fraud or misrepresentation in connection with the sale of the stock to him.

■ The endorsement of certain items of payment on the back of the note constitutes *prima facie* evidence of such payments. The first two items, $800 and $1,200, were paid in cash and the plaintiff has given defendant credit for them. The item of $3,000, according to defendant's own testimony, was in the nature of a rebate on the price which he agreed to pay for his stock. The corporation had no authority to give this credit, as the stock involved had originally been subscribed for by Adams and the price at which it should be sold was determined by the board of directors as well as fixed by the subscription of Adams. It could not, therefore, be sold to defendant or any one else for less than Adams had agreed to pay for it. The fact that this endorsement was not made on the note until April 30, 1931, strongly indicates that the credit thereby given was an afterthought.

■ The balance of credit on the note was intended to be applied as payment on salary due the defendant. At the time those items were entered the sums specified had been earned by the defendant on his contract with the corporation.

There is no evidence that the defendant was, at the time the contract was executed, a director or offi-

cer of the corporation. In fact, the contract was signed on behalf of the corporation by George Robison, who preceded the defendant as its president.

The receiver was appointed upon the petition of a stockholder of the corporation and the answer of the corporation to the petition. According to those pleadings, the assets of the corporation amounted to $10,000 and its liabilities were around $7,500. The grounds for the appointment of a receiver, as stated in the petition, were that there had been mismanagement of the corporation and the new board of directors had attempted to reorganize for the purpose of carrying on an insurance business, but without success, and since the objects of the corporation were impossible of fulfillment its affairs should be wound up and the corporation dissolved.

In 53 C. J., p. 329, § 542, it is said:

"Pursuant to the general rule that the mere appointment of a receiver does not affect rights ultimately to be determined, that the receiver takes only the rights and interest of the original owner, or the right of action of the party whose interest he is appointed to represent, it follows that defenses which might have been made against the party over whose property the receiver is appointed, or whose title to sue and whose interests are represented by the receiver, may be interposed as against him. So a receiver of a corporation takes its assets subject to the conditions and legal disabilities with which it was trammeled in the hands of the corporation and causes of action in the right of a corporation are subject to the defenses which might have been available against it. But on the other hand in his capacity as the representative of the creditors as well as of the corporation, a defense which might have been available against the corporation itself may not lie against him, and a defense will not prevail which involves the recognition and enforcement of a contract which when made was a fraud on creditors, although

the defense might have been good against the corporation itself.''

In the present proceeding, according to the allegations of the pleadings, the plaintiff stands in much the same position as the corporation were it suing on the note. There is nothing to show that the liabilities of the corporation exceeded its assets. Were the corporation suing on the note, it would be bound by the admitted amount due defendant for salary already earned by him, for which credit had been given him by endorsements on the note.

The plaintiff in rebutting the defendant's contention that there was a failure of consideration recognizes the validity of defendant's contract of employment, for we find in plaintiff's brief the following:

''There is another reason why the defendant cannot prevail in his defense of failure of consideration and that is that the consideration received by him for the note, was the stock issued to him and the benefits to be received by him under and by virtue of his contract of employment with plaintiff corporation.''

The defendant testified that he was employed only 11 months under his contract, which at an annual salary of $7,500 would entitle him to $6,875. Of this amount he received $850 in cash, leaving due him $6,025, upon which he has received credit for $5,843.50 in the form of payments endorsed on his note. In addition to the amounts which defendant has been credited on the note and received in cash, there remains due him $181.50 as balance of salary. On the record in this case he is entitled to credit for all the payments, except the item of $3,000, endorsed on the note, as of the dates of the respective endorsements, and is further entitled to a credit of $181.50 on the note, which should be entered as of December 7, 1931.

The question of the amount of attorneys' fees was left to the discretion of the trial court without the introduction of testimony. The amount allowed therefor by the court was $1,000, yet, since we have made provision for credit to defendant for payments on the note in addition to the amount permitted by the circuit court, the sum to which plaintiff is entitled as attorneys' fees should be reduced from the amount allowed by the circuit court to $700. The appellant will recover costs in this court.

With the above modifications, the decree and judgment appealed from will be affirmed.

BELT, J., not sitting.

Petition for rehearing denied April 16, 1935

ON PETITION FOR REHEARING<br>(43 P. (2d) 907)

BAILEY, J. The appellant assigns as one of his reasons for requesting a rehearing the failure of this court in its former opinion to hold that the note was not due and payable at the time the action was commenced. The note was dated November 14, 1930, and according to its provisions was payable on or before five years from date, "with interest thereon at the rate of 7 per cent per annum from date to maturity and from maturity until paid". It contained no other condition as to payment of interest.

■ The appellant as defendant in the circuit court did not attempt to defer the bringing of the action by the plaintiff, but by setting up various defenses essayed to defeat any recovery whatever on the note by plaintiff. He did not demur to the complaint on the ground that the action was prematurely brought, nor was that

question raised by a plea in abatement. Since he did not so avail himself of it, this defense was waived: *Winters v. Grimes,* 124 Or. 214 (264 P. 359); *Sutherlin v. Bloomer,* 50 Or. 398 (93 P. 135); *Chamberlain v. Hibbard,* 26 Or. 428 (38 P. 437).

The contention that the action was prematurely brought seems to have been an afterthought on the part of the defendant. He did not raise that question in either his opening or reply brief in this court. In fact, he seems to have relied upon the alleged fact that the note was not yet due, in order to evoke the equity jurisdiction of the court, for we find in his reply brief this statement: "The receiver brings this action on this note upon which by its terms there is nothing now due and payable. The defendant could have contented himself by contesting payment on the ground nothing was due, but that would not have afforded him complete relief."

The other questions raised by the petition for rehearing were fully considered and disposed of in our former opinion.

The petition for rehearing is denied.

BELT, J., not participating.

---

Objections to cost bill sustained in part May 14, 1935

ON OBJECTIONS TO COST BILL
(45 P. (2d) 167)

BAILEY, J. The respondent has filed objections to some of the items included in appellant's statement of costs and disbursements, on the ground that the cost bill containing these items was not filed within five days after the rendition of the decision of this court or "not later than the first day of the next regular term of court occurring after the expiration of said five days".

The opinion on this appeal was filed February 19, 1935, and an extension of time was then obtained by the appellant for filing petition for rehearing. This petition was denied April 16, 1935, and the cost bill was filed on April 22 following. The mandate has not yet been issued. The new term of this court began March 4, 1935.

In the case of *In re Will of Pittock*, 102 Or. 159 (199 P. 633, 202 P. 216, 17 A. L. R. 218), this court after reviewing many of its prior decisions held that the allowance and taxation of costs and disbursements in this court was controlled by statutes now known as §§ 7-605, 7-606, 7-607, 7-609 and 7-610, Oregon Code 1930. The opinion therein on the merits was handed down July 26, 1921, and the statement of costs and disbursements was not filed until September 8 of the same year, after service on the day previous. Two days after the filing of this cost bill the contestant filed objections to it on the ground that it had not been presented within the time required by law or the rules of this court. Thereupon, the clerk allowed only statutory costs in the sum of $25 and rejected the item charged for printing of brief. On motion to retax costs this court held that the cost bill was filed within the time allowed by statute and that the clerk of this court had no authority to pass upon objections to cost bills, as that, since the amendment of 1903, was a matter for the court alone.

This court there called attention to the fact that § 569 Or. L. [now § 7-609, supra] provided that the party entitled to costs might file his cost bill within five days after the rendition of the decision by this court, without proof of service thereof on the adverse party unless some rule of court required such service, and that if it was not filed within five days it might be filed at any time thereafter "but not later than the first day of

the next regular term of court occurring after the expiration of said five days", by serving the adverse party, whether the said party had appeared or not. It was further held by the court in that case that the rules of this court could not alter or change the statute relating to time within which the statement of costs and disbursements should be filed, and the opinion expressly overruled all the previous cases of this court holding that the sections of the code above referred to, relating to the time in which cost bills could be filed, did not apply to the supreme court. Since the case of *In re Will of Pittock,* supra, was decided, this court, so far as we have been able to ascertain, has consistently followed the rule there laid down: *State v. Way,* 120 Or. 134 (249 P. 1045, 251 P. 761); *McKinney v. Nayberger,* 138 Or. 203 (295 P. 474, 2 P. (2d) 1111, 6 P. (2d) 229).

 The time for computing the five days begins on the date when the opinion is handed down, and is not extended by the pendency of a petition for rehearing: *McFarlane v. McFarlane,* 43 Or. 477 (73 P. 203, 75 P. 139). The statutory costs, such as filing fee, trial fee and prevailing attorneys' fee, are allowed as a matter of course without the filing of a cost bill: *Anderson v. Adams,* 44 Or. 529 (76 P. 16). However, under § 7-609, supra, it is expressly provided that no disbursements shall be allowed unless a statement thereof be filed within the time therein provided. In the case at bar the new term began more than five days after the rendition of the opinion on the merits, and therefore it was necessary to file the bill on or before March 4, 1935, the first day of the new term of court. Therefore the appellant is entitled to his costs only. His claim for disbursements is disallowed.

CAMPBELL, C. J., and BELT, J., not participating.