Argued December 20, 1927, affirmed January 17, 1928.

## STATE v. LEE WYE.

(263 Pac. 60.)

**Indictment and Information—Indictment for Promoting Lottery, Specifying Time, Place and Type of Lottery, Incorporating Phraseology of Statute Held Sufficient (Or. L., § 2116).**

1. Indictment for setting up and promoting lottery under Section 2116, Or. L., specifying the time, place and general type of lottery, incorporating the phraseology of the statute under which it was filed, and alleging that a more particular description of the lottery was unknown to the grand jury, *held* sufficient, especially where it was clear that defendant was not misled or prejudiced.

**Indictment and Information—Indictment Using Statutory Language is Sufficient if All Necessary Elements of Crime are Charged and Defendant is Informed of Its Nature.**

2. In charging crime in indictment, the use of the statutory words is sufficient if the language contains all that is essential to constitute the crime and apprise the defendant of the nature of the crime charged.

**Indictment and Information—Statement of Evidentiary Details Held Unnecessary in Indictment for Promoting Lottery (Or. L., § 2116).**

3. In indictment for setting up and promoting lottery in violation of Section 2116, Or. L., allegations of evidentiary details,

---

2.  See 14 R. C. L. 185; 17 R. C. L. 1239.

which indictment alleged were unknown to grand jury, *held* unnecessary even though it developed on trial that some of the witnesses before the grand jury were acquainted with these details.

Indictment and Information—On Prosecution for Promoting Lottery, Evidence of Sales of Lottery Tickets on Dates Other Than Date Specified in Indictment Held Admissible (Or. L., § 2116).

4. On prosecution under Section 2116, Or. L., for setting up and promoting lottery, evidence of sales of lottery tickets on dates in same month other than the particular date specified in the indictment *held* admissible, since the indictment charged a continuing offense.

Criminal Law—In Lottery Prosecution, Evidence of Other Gambling Games on Premises Held Relevant on Knowledge, Notwithstanding It Tended to Show Other Offenses (Or. L., § 2116).

5. On prosecution under Section 2116, Or. L., for setting up and promoting a lottery, evidence of other gambling games on defendant's premises and while he was present *held* relevant and admissible to show, among other things, defendant's knowledge of use to which his property was put, and that lottery games conducted thereon were probably of similar character, notwithstanding such evidence tended to show other offenses.

Criminal Law—Admissibility of Evidence of Crime Other Than That Charged Depends on Its Capacity to Establish Crime Charged.

6. The admissibility of evidence of crimes other than crime for which defendant is being tried depends on the capacity of such evidence to establish the particular crime with which defendant is charged, and caution should be used in its admission.

Criminal Law—Irrelevant Part of Conversation is not Admissible Merely Because Another Part of Conversation has Been Admitted (Or. L., § 711).

7. Irrelevant portion of conversation is not admissible on criminal trial merely because the opponent has been permitted to introduce a relevant portion of the conversation, notwithstanding Section 711, Or. L., providing that when part of a conversation is given in evidence by one party, the whole, on the same subject, may be inquired into by the other.

Criminal Law—Where Accused, Cross-examined as to Conversation, Admitting Remainder of Conversation on Redirect Held not Error, Where Objection Thereto Failed to Show Its Irrelevancy (Or. L., § 711).

8. In prosecution under Section 2116, Or. L., for setting up and promoting lottery, where accused had cross-examined witness as to conversation with another concerning lottery admitting remainder

6. Admissibility of evidence of other crimes, see notes in 44 Am. Rep. 299; 10 Am. St. Rep. 976; 7 Ann. Cas. 66; 8 Ann. Cas. 773; 62 L. R. A. 194. See, also, 8 R. C. L. 198 et seq.

7. See 10 R. C. L. 936.

of conversation on redirect examination *held* no error under Section 711, where objection thereto was general and entirely failed to point out that the balance of the conversation was irrelevant and unnecessary to a correct understanding of portion already admitted.

**Criminal Law—Instruction That Exact Date When Defendant Set Up and Promoted Lottery was Unimportant Held No Error, Notwithstanding Defendant Offered Alibi Evidence (Or. L., § 2116).**

9. Instruction, on trial for setting up and promoting lottery in violation of Section 2116, Or. L., to the effect that the exact date when defendant set up and promoted lottery was unimportant, but limiting date to "approximately" day mentioned in indictment, *held* no error, notwithstanding defendant offered alibi evidence, which, however, related to no particular hour, day, week or month.

Criminal Law, 16 **C. J.**, p. 572, n. 14, 15, 16, 17, p. 588, n. 8, p. 589, n. 13, p. 592, n. 37, p. 856, n. 23, p. 875, n. 19, p. 877, n. 29.
Indictments and Informations, 31 **C. J.**, p. 674, n. 71, p. 709, n. 31, p. 843, n. 30.
Lotteries, 38 **C. J.**, p. 310, n. 30, p. 311, n. 37, p. 312, n. 61, p. 314, n. 86, p. 315, n. 25.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.

The defendant was convicted of the crime of setting up and promoting a lottery as defined by Section 2116, Or. L.; he was sentenced and now appeals; there are forty-five assignments of error.

The premises which the state alleges the defendant operated were upon the ground floor at number 285 Everett Street, Portland, Oregon; one who sought entry into the gambling-room passed through a door and came into a room about twelve by eighteen feet in size. In one of the rear corners of this room is a door which opens into a short, narrow hallway. This hallway proceeds first a few feet in an easterly direction and then extends a few feet north; at its far end is a barbed, steel door, operated by a lookout who is concealed in a very small room adjacent to this hallway. This lookout is able to observe those in the

hallway but is concealed from their observation. If the appearance of the entrant at this stage of his progress is satisfactory to the lookout, the steel door opens and he is permitted to proceed into the next chamber, which is another small room. Here progress is again impeded by another steel door, also operated by the lookout. Should the latter open the door the visitor passes through and enters a room about twenty by twenty feet in size; alongside of it is an office room. The state contends that the defendant operated in this main room a lottery and that he was the proprietor of the facilities which we have just mentioned.                    AFFIRMED.

For appellant there was a brief over the name of *Messrs. Collier, Collier & Bernard,* with an oral argument by *Mr. Earl F. Bernard.*

For respondent there was a brief over the names of *Mr. Stanley Myers,* District Attorney, and *Mr. Joseph L. Hammersley,* Deputy District Attorney, with oral arguments by *Mr. George Mowry* and *Mr. John Mowry,* Deputy District Attorneys.

ROSSMAN, J.—The first assignment of error contends that the court erred when it overruled the defendant's demurrer to the indictment; particularly the demurrer charged:

"(c) The indictment is not direct or certain as regards, nor does it charge, the particular circumstances of the alleged crime.

"(d) The indictment does not state the act or omission charged as the crime with such a degree of certainty as to enable the court to pronounce judgment, upon a conviction, according to the right of the case.

"(e) The indictment does not inform the defendant as to the nature and cause of the accusation against him."

The defendant particularly relies upon *State* v. *Dougherty*, 4 Or. 200. In that case the indictment accused the defendant "of the crime of aiding and being concerned in setting up and managing a lottery for money, committed as follows * * on the 9th day of January, 1871, in the county of Multnomah, and State of Oregon, did unlawfully and feloniously aid and were concerned in setting up a lottery for money contrary to the statutes * * "; this indictment was held defective. In *State* v. *Doty,* 5 Or. 491, the court briefly pointed out the defect in the indictment:

" * * In *State* v. *Dougherty et al.*, the indictment was held to be defective, because it failed to describe the character of the lottery which the defendants were charged with setting up, so as to enable them to know what was intended, and to be prepared for their defense when the case should be called for trial."

1, 2. In the case now before us the indictment identifies the time as May 24, 1926, and the place as a room in a building at 285 Everett Street, Portland, and the type of lottery as Chinese; it further specifies the type of lottery in these words:

" * * then and there played and conducted and then and there intended and devised to be played and conducted by the means of Chinese lottery tickets for money and other valuable things, a more particular description of which said lottery or of which said Chinese lottery tickets, or of which said money or other valuable things is to this grand jury unknown."

The indictment is lengthy and continues to the effect that at that time in the aforementioned room the defendant permitted the sale of such a ticket to one

J. Scott Milne and other persons; that the tickets purported to entitle the holder to a share and a prize to be drawn in the lottery. We believe that the indictment was sufficiently specific and that the rules stated in *State* v. *Dougherty* as to certainty of charge are not violated. It will be noticed that the language of the indictment incorporates the phraseology of Section 2116, Or. L., under which it was filed. In addition to the language of the statute we have the identifying details and matter descriptive of the lottery already mentioned. The use of the statutory words is sufficient, if the language thus employed contains all that is essential to constitute the crime and apprise the accused of the nature of the crime charged: *State* v. *Miller,* 119 Or. 409 (243 Pac. 72); *State* v. *Laundy,* 103 Or. 443 (204 Pac. 958, 206 Pac. 290); *State* v. *Underwood,* 79 Or. 338 (155 Pac. 194); *State* v. *Runyon,* 62 Or. 246 (124 Pac. 259); *State* v. *Miller,* 54 Or. 381 (103 Pac. 519); *State* v. *Koshland,* 25 Or. 178 (35 Pac. 32); *State* v. *Shaw,* 22 Or. 287 (29 Pac. 1028). In the following cases the indictments charging lottery offenses were in the words of the statute; they were held sufficient: *State* v. *Lee,* 228 Mo. 480 (128 S. W. 987); *State* v. *Hilton,* 248 Mo. 522 (154 S. W. 729); *State* v. *Becker,* 248 Mo. 555 (154 S. W. 769); *Polk* v. *State,* 69 Tex. Cr. Rep. 430 (154 S. W. 988). We believe that the indictment charged the defense in language sufficiently specific to be free from error.

3. The defendant further contends that the indictment is defective because in two instances it alleges that further details of the descriptive matter were unknown to the grand jury; it developed during the trial that some of the witnesses before the grand jury were acquainted with these details. As we have

already seen the indictment charged the crime in the words of the statute; time, place and the general type of the lottery were stated without reservation. Likewise the indictment without equivocation charged that a sale had been made to an individual whose correct name appeared in the indictment. The other details which the indictment alleged were unknown to the grand jury, we believe were evidentiary in character, and need not have been set forth: Joyce on Indictments (2 ed.), § 499; 38 C. J., p. 314. It is clear that the defendant was not misled nor prejudiced.

A large number of assignments of error are based upon the court's ruling admitting testimony; these can be dealt with fairly and expediently by grouping them into four subdivisions.

4. In assignments of error 16 and 17 the defendant claims that the court erred when it permitted one of the state's witnesses, Milne, to testify on direct examination that between May 1 and May 24, 1926, the latter being the date mentioned in the indictment, he had seen Chinese lottery games conducted in this room in the presence of the defendant, and that on five or ten of these occasions the defendant marked the ticket and received the money upon the sale. The objection to this testimony was that the state had elected to try the defendant for an offense committed May 24th and that therefore evidence of other offenses was irrelevant and immaterial, and collateral to the crime of May 24th. But the indictment charged the defendant not with the commission of a single act like the exploding of a bomb, but with a continuing offense. Proof of a single sale might not have satisfied the jury that the defendant was guilty of the crime charged against him; it was necessary, therefore, for the state to prove that the

defendant maintained the place at 285 Everett Street for the sale of the tickets; this rendered evidence admissible that the defendant was conducting an establishment where tickets were commonly marked and sold. The proof objected to by the defendant had a tendency to prove this element and show that the defendant was the person in charge of the establishment. We are satisfied with the rule stated in *State* v. *Lee,* 228 Mo. 480 (128 S. W. 987):

"Now in this case, the offense is the setting up and keeping a gambling table and permitting persons to bet and play upon the same for money or property, and it is charged as a continuous offense. Upon such a charge then was it erroneous to permit the prosecuting attorney to show that this crap table had been maintained in July and November previous to the 20th of December, 1907, the date of the alleged offense? This evidence was introduced to show the knowledge of the defendant, among other things, that large numbers of persons were in the habit of congregating in the back room of his premises and playing craps on the table there, and the evidence as to the raids in July and November failed to show the actual presence of the defendant in this crap table room at the time of those raids, but the evidence also tended to show that he was the proprietor of the place and had control of the lights and of the premises and had been warned by the officers that he must stop the game."

To the same effect, see *State* v. *Lawson,* 239 Mo. 591 (145 S. W. 92); *State* v. *Behan,* 113 La. 754 (37 South. 714); *State* v. *Reinhart,* 26 Or. 466 (38 Pac. 822); 13 C. J., Criminal Law, § 1141.

Another assignment of error is to the effect that the trial court erred in permitting the witness Shaylor to testify on direct examination that during May, 1926, in the presence and observation of the defend-

ant Lee Wye he saw tickets in 17 companies other than the Red Head Company sold at 285 Everett Street. The objection was that the testimony was wholly immaterial to any issue in this case; attempting to introduce collateral issues. The purpose of signifying an objection is to make known that the opponent desires the court to rule upon the admissibility of a piece of evidence and to point out succinctly the issue of law which he relies upon to exclude the evidence. "An objection serves for the rules of Evidence, the same purpose as a demurrer for the rules of substantive law." Wigmore on Evidence, § 18. A material fact is defined by Chamberlayne as, "The term 'material facts' would seem to include the *res gestae* facts which are constituent and all probative ones which must be proved if such constituent facts are to be established." Chamberlayne on Evidence, § 1748. It is clear that this evidence was material; whether it was objectionable as evidence of collateral crimes, we shall discuss later.

5, 6. Thirty-three assignments of error are based upon rulings of the court permitting witnesses for the state to testify on direct examination that at various times when they saw Chinese lottery games in operation on these premises during the period the defendant was proprietor, they also saw in active operation in the same room, other gambling games—black jack, chuck-a-luck and craps, all conducted by Chinese, and all of them played for money. In almost all instances the defendant was present and was participating by taking in the money, supervising the operation of the games and establishment or settling disputes between the players and dealers. The objection to this testimony was that it was immaterial and that it consti-

tuted an attempt to introduce evidence of collateral offenses having no connection with this crime.

The defendant denied that he was present when any lottery games were played; he denied that he was the occupant of these premises; he admitted that two years ago he had owned this place, but testified that he had sold it and that for two years he had not been inside of the establishment. The foregoing evidence of other gambling games admitted over the defendant's objections showed the defendant's presence upon the premises and his knowledge of the use to which the property was being put. In addition the state had a right to show not only that lottery games were being conducted, but also the general nature of the surroundings and the physical objects which constituted the establishment, even though those objects were of a character which cast an unfavorable reflection upon the defendant. Anything that appealed to the gambling instincts of men within this room would apparently promote the lottery and increase the revenue received at the table. The witness testified that from fifty to seventy men were always in this room when the games were in operation. The other gambling games in the same room with the lottery table would certainly arouse the gambling instinct in a group of men crowded into this small room, and bestir within them a strong propensity to become participants. Had the defendant employed spielers to attract the attention of those in the crowd to the lottery table, no one would doubt the admissibility of evidence of that fact; the defendant accomplished the same purpose in a more profitable manner by setting up various other games. He cannot exclude evidence by making his actions criminal where the evidence would be admissible if his act was lawful. The fact

that this proof showed that the other games were of a gambling nature was evidence from which the jury could properly infer that the lottery games were of a similar nature: *State* v. *McClard,* 81 Or. 510 (160 Pac. 130). The relevancy of this testimony to prove his presence, proprietorship and knowledge that gambling was being conducted upon the premises is so evident that we shall discuss this phase of the question no further, and shall pass on to the next objection that it had a tendency to show defendant's participation in other crimes. Evidence of this character reveals to the jury the fact that the defendant has committed other crimes, but it is neither admissible nor inadmissible by reason of that fact alone; its admissibility is dependent upon its capacity to establish the particular crime with which the defendant is charged; its inadmissibility is dependent upon whether it violates some recognized rule of evidence, as, for instance, the Hearsay Evidence Rule. This has been our holding in so many cases we deem it unnecessary to enumerate the citations. The fact that evidence of this character has a tendency to prejudice the jury, if not to make them reckless, should cause the trial court to be cautious in admitting it and to require the proponent to point out some relevant matter that the evidence will establish. We have already reviewed these relevant matters and are satisfied the court committed no error.

7, 8. The next assignment of error is based upon the court's action in overruling defendant's objection to a question put to the witness Oscar Foster upon direct examination. On cross-examination this witness had testified that he had had a conversation with Dr. Clement G. Clarke, a Portland minister, and that in this conversation he had told Dr. Clarke what he

knew "about this Chinese lottery business," and about this defendant. The defendant contended that Dr. Clarke's denunciations from his pulpit of the public officials and police department of Portland had finally carried him to the point where he was the cause of instituting this prosecution. In fact his name occurs in the record almost as frequently as the defendant's. On redirect examination the court permitted the state to ask the witness: "Go ahead, Mr. Foster, and tell the jury what you told Mr. Clarke about lottery conditions in Portland." Section 711, Or. L., is as follows:

"When part of an act, declaration, conversation, or writing is given in evidence by one party, the whole, on the same subject, may be inquired into by the other; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation or writing which is necessary to make it understood may also be given in evidence."

This brief rule is inadequate to guide a court in all cases to a correct ruling. Each brief rule of evidence is not universal. The balance of the conversation to be admissible should serve some useful purpose in the case. No irrelevant utterance should take up the time of the court merely because it is part of a conversation already received; likewise no more of the remainder is admissible than is explanatory of the part already received: Wigmore on Evidence (2 ed.), § 2113. But the defendant's objection was of a very general type and entirely failed to point out that the balance of the conversation was irrelevant and unnecessary to a correct understanding of that already admitted. The court committed no error in this particular.

In regard to all of these assignments of error relating to evidence of other gambling games and acts, it is worthy of note that the court instructed the jury quite fully that this evidence was received for a limited purpose only, and that unless the defendant was guilty of the crime charged in the indictment the jury must acquit him.

9. It is next contended that the court erred when it instructed the jury:

"The 24th day of May is not particularly important, but you must all agree on one date and one act; you could not, some of you conclude that he did some one of these acts on the 24th of May and some other of you conclude that he performed any one of these acts or another act on the 20th of May, and another on the third of June, that won't do, all twelve jurors must be convinced beyond a reasonable doubt that at the place designated on some one day, on approximately the 24th day of May, he committed some one of the acts indicated, that he either set up or promoted a lottery, or that he knowingly permitted the sale of lottery tickets. If any one of them is proved to your satisfaction beyond a reasonable doubt, so far as the act itself is concerned, then your duty is to vote guilty; you must all agree upon the date, however, as I said."

The defendant contended that he was not the proprietor of this establishment, and was not inside of the place since he sold it some two years ago. He offered evidence that since he sold this establishment he became proprietor of a Chinese restaurant in another part of Portland and that he spent a large portion of time in the latter place. While this was evidence of that type generally referred to as alibi, yet it related to no particular hour, day, week or even month. It covered not only the entire summer of 1926, but went beyond.

When the defendant signified an objection to the above instruction the court added: ''There was testimony covering quite a little period of time there, but I have limited it to approximately; 'approximately' means on or about.''

We believe no error was committed: *State* v. *Goddard,* 69 Or. 73 (133 Pac. 90, 138 Pac. 243, Ann. Cas. 1916A, 146); *State* v. *Ragan, ante,* p. 521 (262 Pac. 954).

We have carefully reviewed all other errors assigned by the defendant and find no error.

                                        AFFIRMED.

RAND, C. J., and COSHOW and McBRIDE, JJ., concur.