Argued April 21; reversed June 8; rehearing denied July 7, 1937

## PATTERSON ET AL. *v.* HORSEFLY IRRIGATION DISTRICT ET AL.

(69 P. (2d) 282, 70 P. (2d) 33)

[1]

*William Ganong*, of Klamath Falls, for appellants.
*J. H. Carnahan*, of Klamath Falls, for respondents.

BAILEY, J. The defendants, Horsefly Irrigation District, a quasi-public corporation, and Irl Davis and Henry Schmor, directors of said district, have appealed from a judgment rendered against them and in favor of Grace C. Patterson and J. G. Patterson, her husband, awarding recovery to the Pattersons, plaintiffs, for damage to their land and for loss of crops and loss of use of a barn and root cellar. The third director of the defendant district, J. L. Sparretorn, died prior to the commencement of this action. All the above

claims of damage are predicated on the alleged negligence of the defendants in the construction, operation and maintenance of the district's irrigation ditches, and the raising of a dam.

In December, 1931, the plaintiffs acquired 160 acres of land within the Horsefly Irrigation District in Klamath county, Oregon, described as the southeast quarter of the northwest quarter, the northeast quarter of the southwest quarter, and the west half of the southwest quarter of section 20, township 39 south, range 11 east, W. M. The tract includes 120 acres in the southwest quarter of section 20,—all of that quartersection except the southeast quarter thereof; and the remaining 40 acres lie immediately north of the northeast quarter of said quartersection.

Water for the district is furnished by Lost river, which flows in a southwesterly direction past the plaintiffs' land, at the northwest corner of the southwest quarter, bordering it for approximately 300 feet. To the west of plaintiffs' property, distant about one-fourth of a mile, is the Harpold dam in Lost river. The irrigation ditches are supplied with water by a pumping plant on Lost river about 900 feet above the dam and some 500 feet west of plaintiffs' premises.

Three ditches, almost parallel, have been constructed by the district along the side-hill above plaintiffs' property, all of which ditches cross the southwest corner of plaintiffs' tract. The uppermost ditch, which is nearest the southwest corner of the tract here involved, was built in 1928 and abandoned in 1932. The middle ditch, so designated because it lies between the other two ditches, was built in 1918; and the Horn or lower ditch was built and first used in 1923. The latter two ditches are still in use and at the time the upper ditch was

abandoned in 1932 some of the supply of water formerly carried by it was transferred to and thereafter carried by the other two ditches.

The Patterson ranch slopes over 20 feet from the level of Horn ditch to the level of Lost river. The soil is underlaid with a thick stratum of impervious material known as hard-pan, at depths ranging from six inches to more than three feet. The ground through which the ditches are constructed is rocky, sandy and porous. In some places the ditches have been excavated down to a chalk base. The Horn ditch is built on a grade of approximately one foot drop in 3,000 feet.

Across the northwest quarter of the southwest quarter of section 20 is a slough connecting with Lost river at a point where the river borders the plaintiffs' land. A few feet distant from the junction of the slough and Lost river the plaintiffs, at a cost of some $1,500, built in the fall of 1933 a combination barn and root cellar. From this cellar a ditch was dug to the river. At the time the barn was built the plaintiffs knew that the defendant district was contemplating raising the level of the water in Lost river.

In the spring of 1934 the district raised the Harpold dam, thereby raising the water in Lost river several inches, over 16 inches, according to plaintiffs' testimony, and according to that of the defendants, not more than five inches. The plaintiffs claim that this action on the part of the defendants resulted in raising the water in Lost river above the level of the floor of the root cellar, causing said floor to become and remain wet and muddy.

This action was instituted by Grace C. Patterson as sole plaintiff. Upon the trial of the case it developed that her husband, J. G. Patterson, owned the tract of land with her, and he was therefore made a party

plaintiff. In addition to the above-named defendants, Dorothy Eyers, secretary of the district, was made a party defendant. Nonsuit as to her was granted during the trial. No error is assigned with reference to the action of the court in these particulars.

The gravamen of plaintiffs' first cause of action is that the defendants, during the years 1932 to 1934, inclusive, permitted seepage, overflow and escape of water from the middle and lower ditches to and upon plaintiffs' land, which, augmented in the year 1934 by the defendants' raising the water of Lost river, completely destroyed thirty-three and one-half acres of plaintiffs' property and damaged the remainder of the tract, including the combination barn and root cellar. The carelessness and negligence of the defendants consisted largely in their failure to construct the irrigation ditches with sufficient grade to permit the proper flow of water therein; lack of necessary repair and maintenance of said ditches; failure to clean the ditches; permitting the growth therein of vegetation variously described as tule, flags and cattails, thereby impeding the flow and raising the water in said ditches and increasing the seepage therefrom; and the further failure of the district to construct toe, or waste, ditches immediately below the main ditches.

Raising the dam in Lost river, according to plaintiffs, raised the water table under their land and prevented the proper drainage of said land into the river. The resultant seepage caused the soil of the above-mentioned thirty-three and one-half acres to become saturated with alkali to such an extent that the expense of reclaiming it and making it available for agricultural purposes is prohibitive. The remainder of their 160 acres, plaintiffs contend, was injured, although to a less degree, by seepage; and the entire

tract was greatly lessened in value because the thirty-three and one-half acres alleged to have been totally destroyed comprise an irregularly-shaped area near the center of the tract, so that plaintiffs' remaining tillable land is rendered difficult and expensive to cultivate and use.

The second cause of action is based upon the total loss of crops on plaintiffs' land for the years 1932, 1933 and 1934, after the plaintiffs had "plowed, prepared, ditched and checked the cultivable lands of said ranch and had planted valuable crops of oats, rye, barley, potatoes and other farm produce", due to the alleged acts of negligence of defendants hereinabove mentioned. Since the defendant Schmor did not take office as a director until January, 1933, the trial judge eliminated from the consideration of the jury all damage to the crops suffered by the plaintiffs prior to 1933.

The defendants in their third amended answer denied all the acts of negligence charged against them. They admitted that they raised the water in Lost river, but at no time more than four inches above the level of prior years; that 33 acres of the land were worthless, but that the same had been of no value for farming purposes for many years prior to the commencement of the action; that there was a failure of crops for the years referred to in the complaint, but that such failure "was caused by careless handling thereof by plaintiffs' tenants and his [their] failure to care for them in a husbandlike manner"; and that the ditches were built on sloping ground through an area in places underlaid with chalk.

The appellants' brief contains 26 assignments of error. Three of the assignments have reference to the pleadings. Many of them refer to alleged errors in the introduction of testimony and the refusal of

the court to admit other evidence. Several of the assignments have to do with exceptions taken to the giving of certain instructions and the refusal to give other instructions requested, and the denial of the motions of the directors for nonsuit and for a directed verdict.

■ The first assignment of error is based upon the denial by the court of defendants' motion to strike from the files the first cause of action, on the ground that the same contained two causes of action not separately stated, in that the damage suffered from seepage was a matter of trespass on the case, whereas that part of the first cause of action covering the raising of Lost river was in trespass. As we construe this initial pleading, the damage to plaintiffs' land did not result solely from the seepage or from the raising of the level of the river, but was due to a combination of both. It is impossible to segregate the injuries to plaintiffs' land caused by the various acts of negligence charged to the defendants.

■ There is included in the defendants' first amended answer what is designated as a fifth further and separate answer and defense to plaintiffs' complaint. It is therein alleged that the defendant district has for several years "immediately last past been in an impoverished condition and has had no money with which it could build or provide drainage facilities for any lands on [in] said district, and has been unable to borrow any such money, and for said reasons has been unable to rebuild any existing irrigation ditches or to construct any additional drains, all of which facts have been communicated to plaintiff". This affirmative defense was stricken, on motion of the plaintiffs, on the ground that the same was sham, frivolous, irrelevant, incompetent and immaterial.

The defendants do not raise the question that the sufficiency of this answer should have been tested by demurrer rather than by a motion to strike, but do contend that the facts therein alleged, if proved, would be a complete defense to any recovery by the plaintiffs, and in support of this argument they cite and rely upon *Batdorff v. Oregon City,* 53 Or. 402 (100 P. 937, 18 Ann. Cas. 287), and *Humphry v. City of Portland,* 79 Or. 430 (154 P. 897). In the former case it was stated that where injuries are sustained in consequence of the *nonfeasance* of an officer in failing to perform what the law commands him to do, the want of available funds exonerates him. This affirmative defense was filed on behalf of all the defendants, including the irrigation district, and, as is hereinafter pointed out, was insufficient as a defense. In *Humphry v. City of Portland,* supra, this court quoted with approval from Sherman & Redfield on Negligence, 6th Ed., § 374, to the effect that "want of funds is not available as a defense to a charge of negligence in not erecting barriers on a dangerous street, or not closing the street altogether, when necessary".

In the instant case, the raising of the water level in Lost river by increasing the height of the dam was not due to want of funds. And, had the district been in financial difficulties, it could have stopped the pumping of water from the river into its irrigation ditches. The allegations contained in this affirmative answer are conclusions of law and do not constitute a defense to plaintiffs' cause of action. The district has the power to raise necessary funds by levying assessments, and the defendant directors are granted authority to make the required assessments.

■ The defendants set forth in the second amended answer two further and separate defenses. The first

one of them is based on the ten-year statute of limitations and has reference to the time when the ditches were constructed. The second affirmative defense is based on the two-year statute of limitations and concerns plaintiffs' crops. Demurrers were sustained to both of these separate defenses, on the ground that the allegations therein contained did not constitute a defense to plaintiffs' complaint.

In the order sustaining the demurrers the court further directed that the defendants file a "third amended answer, omitting therefrom the first and second further and separate answers, but without in any manner waiving the rights of the defendants under such omitted answers". In compliance with the direction of the court, the defendants did, within the time limited, file a new pleading designated as a third amended answer, which, for all purposes here concerned, was identical in language with their second amended answer, with the exception that the two affirmative defenses mentioned were omitted.

The plaintiffs now assert that by the filing of the so-called third amended answer the defendants have waived any error which might have been committed by the court in sustaining the demurrer to the two affirmative defenses contained in the second amended answer. The authorities on which the plaintiffs rely to sustain this contention are not, in our opinion, controlling here, for the reason that the cases to which they look for support relate to instances in which the amended pleading was essentially different from the one which it replaced.

In 1 Bancroft's Code Pleading, § 629, we find the following statement:

"The phrase, 'struck out', as applied to a pleading, is figurative only. An order sustaining a demurrer

to a pleading defeats or suspends for the time being its legal effect in the action, and a successful motion to strike out an answer does no more. In either event the pleading, as a document, remains in official custody, and, among others, for the purpose of ulterior proceedings in the court that made the order, or for the purpose of review in the court of errors. Further, the codes generally require that all pleadings in the case shall constitute a part of the judgment-roll, no matter how the court may deal with them on demurrer or on motion to strike out, or find, on trial, as to the truth of the averments.''

The trial court, in *Mumford v. Keet,* 154 Mo. 36 (55 S. W. 271), struck out a part of the defendant's answer, and the defendant, upon being asked by the court whether he desired to file an amended answer, stated that he desired "to proceed to trial on the part of the answer not stricken out (saving exception, of course, to the action of the court in striking out said answer)'', which the court refused to permit. The trial court held that the defendant must file a new answer, omitting the matter stricken out of the answer, or on failure so to do, default would be entered against the defendant. The defendant refused to file further pleadings and thereupon the court entered default against him and afterward tried the case *ex parte,* refusing to allow the defendant to participate in any way in the trial. On appeal, the supreme court held that the lower court had no right to compel the defendant to file an amended pleading and that he had a right to try the case on what remained of his answer after a part of it had been stricken out by order of the court. In that connection, the court said:

"A petition may also contain two counts, and if one count is adjudged insufficient and the other count is held good, the plaintiff can save his exception to the

ruling as to the count held bad, go on and try the case upon the good count and afterwards have the ruling on the count adjudged bad reviewed on appeal. * * * The same is true of an answer which contains several defenses stated separately. If any one count of a petition or any separate defense set up in an answer is adjudged insufficient, such ruling does not affect the other counts of the petition or the other separate defenses; and if the counts or defenses remaining constitute a cause of action or a defense, as the case may be, there are issues pending before the court which must be tried. In such cases a pleader may amend the insufficiently pleaded matters, or may stand upon the ruling of the court as to them. If he amends, he thereby submits to the ruling of the court, and can not afterwards have such ruling reviewed.''

After discussing the matter at considerable length, the court further stated:

''A trial court could always dictate what causes of action the plaintiff shall assert or what defenses the defendant shall make. By adjudging one count of a petition (or even a part of a count) insufficient, the plaintiff could be compelled to amend, and leave such count out of his petition, and, if he does so, the ruling of the trial court can not be reviewed; or else he must allow judgment to go against him on the good counts as well as the bad, and risk reversing the trial court's ruling on the bad counts. The defendant is in even worse plight, for the plaintiff can amend by omitting the part or count adjudged insufficient, and at once begin a separate action on those claims; but the defendant can not thus go out of the front door of the court and come in again through the back door. He is in court against his will, and must make all his defenses then, in that suit, and can not avail himself of any defense he had, in any subsequent proceeding. If an adverse adjudication as to one defense compels the defendant to amend and omit such defense in order to secure a hearing upon the other defenses pleaded, then it follows that the trial court absolutely

determines which defenses shall be set up; for no reasonable man would take the risk of allowing the judgment to go against him on his good, unattacked defenses, in order to test the ruling of the court on those which were challenged and adjudged insufficient.''

The decision in that case was based on a statute of Missouri not essentially different from §§ 1-905 and 1-910, Oregon Code 1930. It was followed in *Bissetti v. Roberts,* 25 N. M. 365 (183 P. 403), where the court had under consideration a statute almost identical with the Missouri law.

It has been held in a number of cases that the court cannot relieve the unsuccessful party of the effect of pleading over after demurrer has been sustained, by stating that the ruling is without prejudice to the pleader: *Citizens' Savings Bank and Trust Company v. Northfield Trust Company,* 89 Vt. 65 (94 Atl. 302, Ann. Cas. 1918 A, 891); *Birckhead v. Chesapeake & O. R. Co.,* 95 Va. 648 (29 S. E. 678); 49 C. J., Pleading, § 1260.

The two affirmative defenses which the court directed to be omitted from the third amended answer which was ordered to be filed contained nothing of an inflammatory or scandalous nature. The defendants merely set forth therein affirmative defenses to the separate causes of action, based on statutes of limitations. Had these two affirmative defenses contained matter likely to incite the passions or arouse the prejudice of the jury and so prevent it from reaching an unbiased verdict based on the issues in the case, the court might have been warranted in preventing the answer in that condition from being taken to the jury room and required the defendants to pre-

pare at their expense, for the use of the jury in its deliberations, a copy of the second amended answer with these defenses omitted. We have no statute specifically pointing out the procedure to be followed in such an instance, yet under § 28-1715, Oregon Code 1930, the court is authorized, when procedure is not specifically provided, to adopt any suitable mode of procedure that may be most conformable to the spirit of the code; and we believe that some such method of dealing with the situation as above suggested would be less apt to cause confusion in the judgment-roll or result in prejudice to a pleader than the course which was taken by the trial court.

The defendants, however, have not been prejudiced by the action of the court in sustaining demurrers to these defenses or in ordering that an amended pleading be filed with the two affirmative defenses omitted, for the reason that the defendants were permitted to introduce at the trial of the case everything which could have been introduced on the trial of these defenses. Moreover, the court instructed the jury that the plaintiffs could not recover for loss of crops except for the years 1933 and 1934, which came within the two-year limitation period. Evidence as to the damage to plaintiffs' land was limited to the difference in value of their land at the time they acquired it in 1931 and at the commencement of the action on October 4, 1934.

The deed of conveyance of the tract of land to the plaintiffs did not transfer to them any right to recover for prior damage to the land. Therefore, the ten-year statute of limitations was not involved insofar as plaintiffs' first cause of action was concerned.

■ During the trial the plaintiffs introduced in evidence rule 1, of the irrigation district, which provided that the "canals and works of the district, and all turn-outs, checks, pipe-lines and other structures and devices placed in district canals" were under the exclusive control of the manager, who was appointed by the board of directors, and that no other person except his employes and assistants should have any right to interfere in any manner with said canals and works. There was a preface to the published rules of the district, which introductory matter the defendants offered in evidence, contending that since a part of that written document had been introduced by the plaintiffs, the defendants were entitled to have the entire writing admitted. The prefatory matter merely stated that every person in the district should feel a personal responsibility in keeping down expenses and that this could be accomplished by avoiding doing any damage to canals or structures, by stopping small leaks, reporting weak places and breaks, and otherwise following directions regarding use of the ditches. The preface did not qualify or limit in any way the provisions contained in rule 1, which was introduced in evidence, and was not material in any respect to the issues involved in the case. It was properly excluded: *State v. Lee Wye,* 123 Or. 595 (263 P. 60).

■ Dr. Patterson, one of the plaintiffs, testified that certain statements were made, both by himself and by the defendant directors, at one of the board meetings. The defendants offered testimony of their own witnesses concerning statements made by the directors in the presence of Dr. Patterson at that meeting, which testimony was excluded. Thereupon an offer of proof was made in writing, too extensive to be set

forth here. Much of the proffered testimony had reference to the waters of Clear lake and Big springs and none of it was relevant to the issues before the court. It was not offered in an attempt to contradict the testimony of Dr. Patterson. No error was committed in refusing to admit it: *State v. Lee. Wye,* supra; *Mahon v. Rankin,* 54 Or. 328 (102 P. 608, 103 P. 53).

In the course of the trial two of plaintiffs' witnesses, over objection by the defendants, were permitted to testify as to the value of plaintiffs' land in 1936. Those witnesses placed the reasonable market value of the property in that year at $1,000. Their testimony was introduced under the ruling of the court that the plaintiffs show by other evidence that the value at that time did not vary from the value at the time of commencement of this action. The condition under which this evidence was admitted does not appear to have been called to the court's attention again, as no motion was made by the defendants to strike it out for the reason that it was not connected up with the value of the land in October, 1934. As a matter of fact, the defendants' witness Irwin testified that the value of the land was not in excess of $1,000 at the time this action was commenced. And it was the defendants' contention throughout the trial that the plaintiffs' property was at all times of little or no value.

■ In their brief in this court the plaintiffs have advanced as one reason for sustaining the judgment of the circuit court the theory that the defendants' acts constituted an expropriation of plaintiffs' land to the extent to which the same was damaged. It is pointed out that the defendant district is by law granted the

power of eminent domain and that its acts amount to a taking of plaintiffs' property to the extent to which the same has been damaged. In urging this contention in order to uphold the judgment so far as the district is concerned the plaintiffs overlook the fact that the defendant directors are not clothed with the power of eminent domain. The complaint charges all the defendants with negligence in respects hereinabove mentioned. The logical conclusion to be drawn from plaintiffs' allegations is that had the defendants not been guilty of those tortious acts, plaintiffs' lands would not have been damaged. There is no connection between the damaging of plaintiffs' lands due to the alleged torts of defendants and the expropriation of said lands for a public use.

■ Had the defendant district instituted condemnation proceedings for the appropriation of plaintiffs' lands and in such proceedings alleged that said lands were necessary for public use for the reason that the district expected in the future to fail to maintain its ditches properly and expected to allow them to become clogged with vegetation, we surmise that no court would have entertained its petition. In other words, the right of eminent domain cannot be exercised to permit unnecessary damage and waste. This distinction is clearly pointed out by Judge Sanborn in *Hooker v. Farmers' Irrigation District*, 272 Fed. 600, 603, in the following language:

"If the plaintiff sustained damage, as in our opinion there is substantial evidence here tending to prove, by the temporary negligence of the defendant to so maintain, operate, and use its canal as not to injure plaintiff's property, it is liable on account of its negligence to pay that damage. Hopkins v. Clemson Agricultural College, 221 U. S. 636, 646, 647, 31 Sup. Ct.

654, 55 L. Ed. 890, 35 L. R. A. (N. S.) 243; Dryden v. Peru Bottom Drainage District, 99 Neb. 837, 158 N. W. 54. If, on the other hand, the defendant has inflicted damage upon the property of the plaintiff that is the necessary effect of its permanent maintenance and operation of this canal in a lawful and careful manner, which the state has authorized it to do for the public use, it is liable to pay this damage to the plaintiff because the infliction of such damage without compensation is a violation of the constitutional prohibition against the taking or damaging of private property for public use without just compensation therefor. Constitution of Nebraska, § 21, art. 1; Omaha & N. P. Ry. Co. v. John Janecek, 30 Neb. 276, 278, 46 N. W. 478, 27 Am. St. Rep. 399; Pumpelly v. Green Bay Co., 80 U. S. 166, 167, 177, 179, 181, 20 L. Ed. 557; United States v. Lynah, 188 U. S. 445, 469, 471, 23 Sup. Ct. 349, 47 L. Ed. 539; Bramlette v. Louisville & N. R. R. Co., 113 Ky. 300, 68 S. W. 145, 146; Jaynes v. Omaha Street Railway Co., 53 Neb. 631, 641, 649, 650, 74 N. W. 67, 39 L. R. A. 751; Middlekamp v. Bessemer Irrigating Ditch Co., 46 Colo. 102, 103 Pac. 280, 23 L. R. A. (N. S.) 795.''

See also, in this connection, *Gearin v. Marion County,* 110 Or. 390 (223 P. 929).

The court instructed the jury that the defendant district by purchasing or otherwise acquiring a right of way over plaintiffs' lands had thereby precluded plaintiffs from recovering for ordinary damages, that is, such damages as ''might reasonably have been anticipated to occur by reason of the necessary, natural and ordinary use of the ditches for which the right of way was granted''. This instruction was in accord with defendants' contention that since the rights of way were acquired from the grantor, plaintiffs' predecessor in interest, with said grantor's knowledge of their intended use, no recovery could be had for dam-

ages resulting from seepage of water that might have been anticipated from use of the ditches.

The jury was further instructed as follows:

"No. V

"I instruct you that if you find that the defendant district improperly constructed the ditches mentioned in the complaint, and that during the time which has elapsed since such construction it has taken no steps or action properly to reconstruct or remake or relay said ditches, *in such event the district would be negligent,* and if it continued to neglect said ditches, if the ditches were originally improperly constructed and made, if you find from the evidence that such is the fact, and you further find that plaintiffs have been damaged as alleged in their complaint *by the acts of said defendant district,* then you may bring in a verdict against the *defendants* for such amount of damages as the evidence proves has been suffered by the plaintiffs on their said premises and crops or either of them.

    *        *        *        *        *

"No. VII

"I instruct you where a person by artificial means causes water to percolate through the soil to the injury of his neighbor [he] does so at his peril and is legally responsible therefor irrespective of negligence. Therefore, if you find that the plaintiffs' lands or crops were damaged, injured or destroyed by defendants, *or any of them* in the respects mentioned in plaintiffs' complaint, I instruct you that defendants, *and each of them* would be liable even though you might find that they were not guilty of conscious negligence."

Instruction V, above quoted, makes the defendant directors personally liable, solely because of the negligence of the district. Instruction VII eliminates entirely the question of negligence so far as it concerns all the defendants. It is difficult to conceive the full

import of this latter instruction. It refers to "conscious negligence," yet the jury is left in doubt as to what that may mean.

The jury is further instructed that if the plaintiffs' lands or crops were damaged, injured or destroyed by the defendants, or any of them, without any qualification as to how such destruction or injury may have been brought about, then all the defendants are liable. The effect of this entire instruction would seem to be that it makes the district and all its directors insurers against damage of any and every nature resulting from construction, operation or maintenance of the Horsefly irrigation system.

In *Longmire v. Yelm Irrigation District,* 114 Wash. 619 (195 P. 1014), the court said:

"We have already held that one who impounds water is bound to exercise such reasonable care and caution in the construction, maintenance, and operation of his works as a reasonably careful and prudent person, acquainted with the conditions, would exercise under like circumstances, but that he is not an insurer. Anderson v. Rucker Bros., 107 Wash. 595, 183 P. 70, 186 P. 293, 8 A. L. R. 544. The law seems to be well settled in this country that ditch owners are bound to exercise only ordinary care in the construction and maintenance of their ditches (15 R. C. L. 488), and that an owner of land lying below an irrigation ditch can not recover for damages caused by seepage without showing that the ditch was negligently constructed or operated (North Sterling Irrigation District v. Dickman, 59 Colo. 169, 149 P. 97, Ann. Cas. 1916 D, 973; Nahl v. Alta Irrigation District, 23 Cal. App. 333, 137 P. 1080).

"Respondents rely upon the case of Howell v. Big Horn Basin Colonization Co., 14 Wyo. 14, 81 P. 785, 1 L. R. A. (N. S.) 596, but a careful reading of that

case convinces us that it announces no other or different doctrine.''

In accord with the decision in the Washington case last above cited is 3 Kinney on Irrigation and Water Rights (2d Ed.), 672, which amplifies it as follows:

''But the strict rule of liability, as laid down in the cases of dams and reservoirs, and discussed in the previous sections, is not usually applied to ditches and canals, where the water is under no, or comparatively little, pressure. The carrying of water through ditches and canals is not a dangerous or menacing undertaking, and, by the exercise of ordinary or reasonable care, it can be rendered comparatively harmless. And, therefore, even the English courts, which hold the owners of reservoirs to the strict liability for the damages caused by water escaping from such reservoirs without proof of negligence, do not hold the same rule of liability in the cases of water escaping from ditches and canals, upon the ground that it is not so liable to escape except in case of actual negligence, and, if the water does escape it is liable to do little injury, as compared with that when the escape is from a reservoir. Therefore, in applying the rule of negligence or ordinary care to ditch and canal cases, the courts hold that it is the duty of the owners thereof to exercise in their construction, maintenance, or operation, only such a degree of care, which ordinarily prudent men would exercise under like circumstances were the *risk* their own. And, that, in order to recover damages for injuries from the escape of the water from such works, the plaintiff must allege and prove negligence upon the part of the owners, or at least the want of ordinary care. In other words, the owners of an irrigation canal or ditch are not liable as insurers, for injuries sustained to adjoining property by seepage, leakage, or overflow from the canal or ditch, but are only liable for such injuries in case of actual negligence.''

To the same effect, see *Spurrier v. Mitchell Irrigation District,* 119 Neb. 401 (229 N. W. 273, 74 A. L. R.

884); *North Sterling Irrigation District v. Dickman,* 59 Colo. 169 (149 P. 97, Ann. Cas. 1916D, 973); *Salt River Valley Water Users' Ass'n v. Stewart,* 44 Ariz. 119 (34 P. (2d) 400; *Mackay v. Breeze,* 72 Utah 305 (269 P. 1026); *Howell v. Big Horn Basin Colonization Co.,* 14 Wyo. 14 (81 P. 785, 1 L. R. A. (N. S.) 591); *Burt v. Farmers' Co-operative Irrigation Co.,* 30 Idaho 752 (168 P. 1078); *Fleming v. Lockwood,* 36 Mont. 384 (92 P. 962, 14 L. R. A. (N. S.) 628, 122 Am. St. Rep. 375, 13 Ann. Cas. 263); 1 Wiel on Water Rights in the Western States, § 461.

■ The instruction last above quoted removed from the consideration of the jury the question of negligence on the part of the defendants, and, under the pleadings and evidence in the case, was erroneous. We have not overlooked *Mallett v. Taylor,* 78 Or. 208 (152 P. 873), relied upon by the respondents. That was a suit in equity to restrain the defendant from negligently permitting water used by him to escape by overflow and percolation onto plaintiff's land, and the court found that the defendant was guilty of negligence. *Taylor v. Farmers' Irrigation Co.,* 82 Or. 701 (162 P. 973), recognizes the rule that negligence is an essential element to be proved in order to recover damages due to seepage and leakage.

The plaintiffs attempt to justify the giving of instruction VII by their theory that the damage done to their land amounted to expropriation thereof by the defendants, which theory, as we have already stated, is inapplicable to the facts in this case. *Morrison v. Clackamas County,* 141 Or. 564 (18 P. (2d) 814), *Beck v. Lane County,* 141 Or. 580 (18 P. (2d) 594), and the other Oregon cases cited and relied upon by the plaintiffs to the effect that the acts of the defendants

amounted to expropriation of the plaintiffs' land, involve entirely different sets of facts from that in the case at bar and are not here controlling.

■ The defendants predicate error on the refusal of the court to give the following instruction:

"The court instructs you that certain officers of the defendant Horsefly irrigation district have been joined as parties defendant in this action. In this connection the court instructs you that the fact that Schmor and Davis were directors of the district and that Mrs. Eyers was secretary of the district, would not make them personally liable for any damage arising from the operation of the ditches, even though you find that such operations were negligently done, unless you further find that the said defendants acted wilfully and maliciously, or that they acted on their own account and not as officers of the irrigation district."

In our opinion, the court should have instructed the jury as requested by defendants: *Verheyen v. Dewey*, 27 Idaho 1 (146 P. 1116); *Osborne v. Imperial Irrigation District*, 8 Cal. App. (2d) 622 (47 P. (2d) 798).

With reference to the legal status of irrigation districts, we find the following in *Twohy Bros. Co. v. Ochoco Irrigation District*, 108 Or. 1 (210 P. 873, 216 P. 189):

"An irrigation district organized under the Irrigation District Law of this state is a municipal corporation, its property public property, and its officers public officers, elected by the legal voters of the irrigation district, with duties and powers fixed and limited by the law of their creation. Such a district 'is created for a public purpose and it rests in the discretion of the legislature when to create it and with what powers to endow it'."

■ The evidence fails to show that the damages suffered by the plaintiffs were due to the misfeasance

or negligence of the defendant directors. They are not liable for nonfeasance: *Corliss v. Van Duzer*, 132 Or. 265 (285 P. 253). According to rule 1 of the district, the canals and works of that defendant are under the exclusive control of its manager and his associates, and their negligence, if any, cannot be charged to the directors.

■ Over the objection of defendants, plaintiffs introduced in evidence a letter dated August 26, 1933, addressed to the defendant irrigation district and signed with the name of Oregon-California Power Company by E. C. Koppen, its hydraulic engineer. The letter thus begins:

"Following is the results of the efficiency tests on the pumps of your district. These tests were made during 1933 by Mr. W. J. Conery of the Bryon Jackson Company. These data, together with some comments of our own, are being passed along for your information."

Mr. Wales, a civil engineer and water master of District No. 19, Klamath basin, was permitted, over the defendants' objection, to testify that the water in Lost river had been raised sixteen and three-fourths inches by increasing the height of the dam, basing his estimate on figures contained in the above letter. There was no evidence whatever introduced to prove the correctness of the figures in said letter. The height to which the water had been raised in Lost river was an important factor in the proof of plaintiffs' case, and undoubtedly the testimony of a water master who had had long experience in irrigation matters influenced the jury to a large extent in arriving at its verdict.

The mere fact that this letter was addressed to and in the possession of the defendant district and produced by it at the request of the plaintiffs did not render

it admissible in evidence. There was nothing to indicate that the report embodied in the letter was made to the district at its request or that the district had in any way admitted the correctness of the measurements therein mentioned. The fact that the minutes of the district showed that the board of directors had authorized the raising of the dam some 16 or 18 inches was not proof that this work had actually been done or that the level of the water in the river had been raised at all.

Without going into further detail concerning the assignments of error set forth in appellants' brief, we conclude that the trial court, in giving instructions V and VII, refusing to give defendants' requested instruction above quoted, allowing the introduction of the above letter, and permitting Wales to testify concerning the same, committed errors of so prejudicial a nature as to necessitate the reversal of the judgment in this case.

■ The respondents have requested that this court, under § 3 of article VII of the state constitution, affirm the judgment appealed from, regardless of any error committed in the trial of the case in the circuit court, and, if the judgment cannot be affirmed, that this court enter the judgment that should have been entered in the trial court. The record, however, is in such a state that it is impossible to determine what judgment should be rendered in the case. The evidence is extremely unsatisfactory as to what damage, if any, has been caused to much of plaintiffs' land and to the barn and root cellar. It would be impossible to determine the amount of recovery to which plaintiffs might be entitled. This is a case which should be retried before a jury under appropriate instructions.

We have not here attempted to discuss all the assignments of error contained in appellants' brief, and we express no opinion as to those not herein mentioned. We have stated our conclusions with reference to those matters only which we believe will be important on a retrial of this action.

The judgment appealed from is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

RAND, J., not participating.

---

Petition for rehearing denied July 7, 1937

ON PETITION FOR REHEARING

(70 P. (2d) 33)

■ BAILEY, J. In their petition for a rehearing the respondents Grace C. Patterson and J. G. Patterson, her husband, raise for the first time, so far as we have been able to ascertain, an objection to the sufficiency of defendants' exceptions to certain instructions of the court to the jury, which instructions were in our former opinion held erroneous. The appellants in their opening brief quoted instruction VII given by the court and stated that the question of the correctness of this instruction was the most important matter to be decided on appeal. The respondents concurred in that statement and proceeded to argue that the action was not a "proceeding for pure tort" and that it was not necessary for the plaintiffs to allege and prove negligence. Many pages of the respondents' brief are devoted to a dissertation on the nature of plaintiffs' action, and no question whatever is there raised as to the sufficiency of appellants' exception to the giving of instruction VII. Inasmuch as the respondents have

not heretofore attacked the sufficiency of defendants' exceptions to this and other instructions, any objection thereto must be considered as having been waived. In other words, this court cannot try the case piecemeal.

■ In our former opinion we held that the court committed error in refusing to give an instruction requested by the defendants, relating to the liability of the directors of the irrigation district. In that requested instruction, which is set out in our former opinion, it was stated that the directors were not personally liable unless the jury should find that they had "acted wilfully and maliciously". The respondents now call our attention to the fact that the words "wilfully" and "maliciously" should have been connected by a disjunctive and not a conjunction. This point is well taken, and the requested instruction was erroneous in that it placed upon the plaintiffs the burden of proving more than the law required. Our former opinion is therefore modified accordingly. Such modification, however, does not warrant a rehearing. The other grounds assigned for asking a rehearing are based on matters fully considered in our former opinion and again reviewed. We find that they are without merit, and in all respects except as above indicated we adhere to our former opinion.

■ The respondents have also filed a motion requesting that costs be disallowed the appellants. No objection is made to any particular item of costs or disbursements, except as hereinafter stated. The principal ground for making the motion is that the respondents are the owners of 160 acres of land in Horsefly Irrigation District, which comprises approximately 4,000 acres; that as landowners in the district they are furnishing "their pro rata share of the expenses of this litigation;" and that in the event that they are required

to pay costs and disbursements allowed to the appellants in this court they will be required to bear too great a part of the cost of litigation, inasmuch as they are also obliged as landowners in the district to pay their pro rata share of the additional expenses of litigation incurred by the district, not included in the item of costs and disbursements.

Relative to the allowance or disallowance of costs in this court to the party prevailing here, attention is directed to *McKinney v. Nayberger,* 138 Or. 203 (295 P. 474, 2 P. (2d) 1111, 6 P. (2d) 228), where it was stated that "the rule generally applied where reversals are ordered and the cause is remanded for a new trial is that the allowance of costs incurred in the lower court must await the result of the trial which will eventually settle the controversy, but the costs following the entry of judgment in the lower court, and terminating with a reversal, are allowed to the appellant".

In a number of instances where the judgment appealed from in an action at law has been modified on appeal to this court and judgment here entered, costs have not been allowed to either party: *Stabler v. Melvin,* 89 Or. 226 (173 P. 896); *Olson v. Heisen,* 90 Or. 176 (175 P. 859); *Miller Lumber Company v. Davis,* 94 Or. 507 (185 P. 462); *Lebb v. Peabody,* 103 Or. 405 (205 P. 819); *Obermeier v. Mortgage Co. Holland-America,* 123 Or. 469 (259 P. 1064, 260 P. 1099, 262 P. 261); *Richardson v. Investment Co.,* 124 Or. 569 (264 P. 458, 265 P. 1117).

In *Dippold v. Cathlamet Timber Co.,* 98 Or. 183 (193 P. 909), an action was instituted to recover damages resulting from injury by fire to certain real property situated in the state of Washington. The question as to the jurisdiction of an Oregon court to determine damages to real property in another state was raised

for the first time in this court, where it was held that the circuit court was without jurisdiction of the subject matter, and the action was dismissed. It was held in that case that under the particular circumstances there involved—*i. e.*, the failure to raise the jurisdictional question in the circuit court—neither party should recover costs in this court.

The plaintiff in *Levine v. Levine,* 95 Or. 94 (187 P. 609), brought an action to recover from her divorced husband an amount alleged to be due her for care of their child, based upon a decree of divorce entered in Minnesota. She prevailed in the circuit court, but on appeal the judgment was reversed. With reference to costs, this court said: "Although this is an action at law and the appeal has resulted in a reversal, nevertheless, for the same reason that was given in *Rowe v. Rowe,* 76 Or. 491, 497 (149 P.. 533), and on the authority of *Stabler v. Melvin,* 89 Or. 226, 232 (173 P. 896), we do not allow the defendant judgment for costs and disbursements and therefore neither party shall have judgment for costs."

*Rowe v. Rowe,* cited in the above excerpt, was a suit in equity to set aside a decree entered in the circuit court for Lane county, based upon a decree of divorce entered in the state of California. As a reason for disallowing costs to the prevailing party, this court said: "* * * but, while we find ourselves unable by reason of the law to compel plaintiff in this proceeding to support his minor child, his conduct in refusing to do so is morally so repugnant to our sense of what decency requires of him under the circumstances that we will not require defendant to pay the costs of this appeal."

In all instances which have come to our attention in which this court has not allowed to the prevailing party costs and disbursements on appeal in actions at

law there has not been a complete reversal of the judgment appealed from, but merely a modification thereof, with the exception of *Dippold v. Cathlamet Timber Co.,* supra, and *Levine v. Levine,* supra. This case does not involve any such unusual circumstances as were present in those instances and we see no reason for departing from the general rule announced in *McKinney v. Nayberger,* supra, that where there has been a reversal on appeal the prevailing party is entitled to costs and disbursements. The mere fact that the respondents are owners of 4 per cent in area of the land included in the district and may be assessed for a proportion of the district's costs of litigation does not demand a relaxation of the general rule.

▮ It is further asserted that it was unnecessary for the appellants to bring to this court the entire transcript of testimony, for the reason that this court did not sustain the appellants' contention that as defendants they were entitled to nonsuit and a directed verdict and that the questions that were determined by this court could have been passed upon by a bill of exceptions containing only a part of the transcript of evidence introduced in the trial court. The appellants in good faith assigned as error the refusal of the circuit court to grant a nonsuit and a directed verdict as to the individual defendants. In order to present those questions it was necessary to have a complete transcript of all the evidence. Moreover, the respondents have availed themselves of the entire transcript by requesting that we, under the provision of § 3, article VII of the constitution, re-examine all the evidence and enter such judgment as may be proper in the case.

The petition for rehearing and the motion to disallow costs are both denied.